**Leroy CANDELARIA, Elena Candelaria, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civil Action No. EP–06–CV–0126–KC.**

United States District Court, W.D. Texas, El Paso Division.

Oct. 5, 2007.

bearing on whether Plaintiff was, in fact, employed in Texas.

David P. Leeper, David P. Leeper, Attorney at Law, P.C., El Paso, TX, for Plaintiffs.

Thomas M. Herrin, U.S. Dept. of Justice, Dallas, TX, for Defendant.

### ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered the parties' cross motions for summary judgment and their subsequent responses and replies.[1] After having reviewed the motions,[2] the Court holds that the activity of Plaintiffs' rental company is insubstantial in comparison to that of Plaintiffs' business activity in 2002. The two companies may therefore be grouped as an appropriate economic unit and Plaintiffs may treat the losses in question as non-passive losses. Accordingly, it is hereby **ORDERED** that Plaintiffs' Motion is **GRANTED** and Defendant's Cross–Motion is **DENIED**.

## I. BACKGROUND

Both parties have stipulated to the following facts. Pls.' Mot. 1; Def.'s Cross–Mot. 2. Plaintiff Leroy Candelaria is a pharmacist and businessman who provides pharmaceutical and radiological services in

---

**1.** These motions include Plaintiffs' Motion for Summary Judgment ("Pls.' Mot."); Defendant's Cross–Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment ("Def.'s Cross–Mot."); Plaintiffs' Response to Defendant's Cross–Motion For Summary Judgment ("Pls.' Resp."); Defendant's Reply to Plaintiffs' Response to Defendant's Cross–Motion for Summary Judgment ("Def.'s Reply."); and Plaintiffs' Response to Defendant's Reply ("Pls.' Sur–Reply.").

**2.** The Court notes that **not one** of the parties' motions considered today complies with either the Local Civil Rules of the Western District of Texas regarding page limits (see Local Civil Rule 7) or the Court's Standing Order requiring a table of contents, table of authorities and a statement of the issues for any motion in excess of five (5) pages (Standing Order Regarding Civil Motion Content). Moreover, the Court also notes Plaintiffs' filing of a Surreply July 19, 2007 ("Plaintiffs' Response to Defendant's Reply") without leave of the court, violating Local Civil Rule 7, which prohibits either party from filing additional motions beyond a reply, absent leave of the Court. LOCAL RULE CV–7(e). However, rather than allow parties' inability to follow procedure dictate the Court's already heavy motions docket, the Court will proceed with the motions as filed. Let the parties be cautioned, however, that future non-compliance with Local Rules or Standing Orders will likely be met with sanctions.

the El Paso community. Pls.' Mot. 1. On February 1, 2002, Plaintiff Leroy Candelaria established Castellano Enterprises, LLC ("CEL"), a Texas limited liability corporation electing to be taxed as a partnership. *Id.* at 2. On February 15, 2002, Plaintiff Leroy Candelaria established Desert Imaging Services, LP ("DIS"), a Texas limited partnership, which provides radiological services to the community at large, including X-rays, MRIs, etc. *Id.* CEL's only business activity entails the purchase of imaging equipment which it leased to DIS. *Id.* Plaintiffs' attorney, through whom Plaintiff Leroy Candelaria established the companies, advised this Plaintiff to organize these businesses to reduce tort liability and address financing services. *Id.*

In 2002, CEL's sole income was $220,000 which it earned by leasing imaging equipment to DIS.[3] On April 15, 2003, Plaintiffs filed an IRS Form 1040 for the 2002 tax year, classifying $211,655 as a passive loss from CEL's depreciation losses. *Id.* at 2. On June 6, 2003, Plaintiffs filed an amended tax return, reclassifying the entire CEL loss as an ordinary (non-passive) loss and claiming a refund for $113,720. *Id.*; Joint Ex. 16; Pls.' Complaint 2.

On June 23, 2005, the Internal Revenue Service conducted an audit of the $113,720 refund claim. Pls.' Mot. 2. The IRS determined the leases between CEL and DIS to be made at arm's length and the lease payments were at fair rental value. *Id.* However, the IRS allowed only part of the claim for refund as an ordinary loss ($33,119), and disallowed part of the claim as a passive loss ($80,601). *Id.* at 2–3. The basis for the IRS disallowance of the latter amount was a determination by the auditor that the leasing activity of CEL was "substantial" in relation to the operating activity of DIS. *Id.* at 3. Accordingly, the loss was a passive loss pursuant to 26 U.S.C. § 469 and could only be offset by passive income in the following years. *Id.*

On April 3, 2006, Plaintiffs brought the immediate suit, claiming the auditor's determination and the IRS's subsequent disallowance were improper, and sought the disallowed $80,601. Pls.' Compl. 2–3. Following discovery, both parties have moved for summary judgment.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hopper v. Frank,* 16 F.3d 92, 96 (5th Cir.1994) (citing *Fields v. City of Houston,* 922 F.2d 1183, 1187 (5th Cir. 1991)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

---

**3.** Plaintiff cites $211,655 as CEL's total rental income for 2002. Pls.' Mot. 2. In its Cross–Motion For Summary Judgment and Response, Defendant state that CEL's income for 2002 was $220,000 as shown in CEL's Form 1065 (Joint Ex. 1). Def.'s Cross–Mot. 2. The $220,000 claimed in CEL's 1065 Form appears to the accurate number for overall gross income and will be the amount the Court refers to in the Order.

As to materiality, the Court will only consider "facts that might affect the outcome of the suit" when deciding a motion for summary judgment. *Id.* at 248, 106 S.Ct. 2505. Moreover, a dispute over a material fact is "genuine" only if "the evidence is such a that a reasonable jury could return a verdict for the nonmoving party." *Id.* Therefore, the ultimate inquiry in a summary judgment motion—as in a motion for directed verdict—is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Once the moving party has carried its burden of proving there is no material factual dispute, the burden shifts to the nonmoving party, to show that summary judgment should not lie. *Hopper,* 16 F.3d at 96. In such a case, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 596, 106 S.Ct. 1348 (citations omitted). The nonmoving party must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (quotations and citations omitted) (emphasis in original). This involves "either submitting opposing evidentiary documents or ... referring to evidentiary documents already in the record, [that] set out specific facts showing a genuine issue exists." *Hopper,* 16 F.3d at 96. Summary judgment is appropriate, then, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" and "there is no genuine issue for trial." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. Analysis of CEL as Insubstantial to DIS

Despite the notorious complexity of the United States Tax Code, the issue before the Court today is refreshingly simple. Both parties agree that the entire case turns on whether CEL's leasing activity is "insubstantial" in relation to DIS's business activity as that term is contemplated by Treasury Regulation 1.469–4(d)(1)(A). *See* Pls.' Mot. 1; Def.'s Cross–Mot. 1. If CEL's leasing activity is "insubstantial" when compared to DIS's business or trade activity, as Plaintiffs claim, both DIS and CEL's activities may be grouped as a single economic entity for 2002 and CEL's losses fall within an exception to the Tax Code. This would allow Plaintiffs to claim the $80,601 tax refund they seek on their amended 2002 federal tax return. If CEL's rental activity is not insubstantial when compared to DIS's business activity, as Defendant claims, the losses are passive, CEL and DIS cannot be grouped, and Defendant properly disallowed the $80,601 refund for 2002. Plaintiff will be forced to treat the disallowance as a deduction in the subsequent taxable years.

Plaintiffs argue first that when determining whether CEL's rental activity is insubstantial in relation to DIS's business activity, the Court should look to the disparate incomes of the two businesses for the year 2002, with CEL's gross revenue constituting less than 3.4% of the two companies' combined revenue. Pls.' Mot. 8. In addition, Plaintiffs argue that CEL engaged in essentially no "activity" during the relevant tax year other than leasing its equipment to DIS which DIS was in turn required to maintain. Plaintiffs claim this makes CEL's rental activity even more "insubstantial" to DIS's business activity. *Id.* at 9.

Defendant argues that a comparison of the gross income of the two businesses is not the proper test for determining whether one company's business activity is insubstantial to the other's rental activity. Def.'s Reply 3. Defendant argues that the

Court should look instead to the fact that DIS is CEL's sole source of revenue, making the companies very substantial to each other indeed. Def.'s Cross–Mot. 5. Secondly, Defendant argues that instead of looking to the two companies' gross receipts, the Court should look to the value of the two entities' assets to determine substantiality. *Id.* at 7. When excluding accumulated depreciation and amortization, CEL has greater assets than DIS and is therefore very substantial in comparison to DIS, Defendant claims. *Id.* Finally, Defendant argues that if the Court does look at both companies' gross receipts, it should do so after adjustment for DIS's contractual adjustments, bringing the companies' income much closer in amount and making CEL's activity more substantial to DIS than what Plaintiffs claim.

### 1. The "passive activity" disallowance

Title 26 of the United States Code § 469 states that "[i]f for any taxable year the taxpayer is [any individual, estate or trust, any closely held C corporation, or any personal service corporation]⁴, neither the passive activity loss, nor the passive activity credit, for the taxable year shall be allowed." 26 U.S.C. § 469(a). If an activity is disallowed as "passive," "any loss or credit ... shall be treated as a deduction or credit allocable to such activity in the next taxable year." *Id.* § 469(b).⁵ In other words, "[o]rdinary losses can be applied against any income; however, passive activity losses can be applied only against passive activity income." *Gregg v. United States,* 186 F.Supp.2d 1123, 1126 (D.Or. 2000).

The Code further defines "passive activity" as "any activity which involves the conduct of any trade or business, and in which the taxpayer does not materially

participate." *Id.* § 469(c)(1). More importantly for purposes of this case, "passive activity includes any rental activity," regardless of how much the taxpayer materially participates in it. *Id.* § 469(c)(2). The Code defines "rental activity" as "any activity where payments are principally for the use of tangible property." *Id.* § 469(j)(8). CEL is a company whose sole business is to lease equipment to DIS. Therefore, CEL's business constitutes a rental activity under the Code. If this were the end of the analysis, then, both parties agree that CEL's business activity is passive and the IRS properly disallowed CEL's 2002 losses in question.

### 2. The facts and circumstances test

There is an exception, however, to the rule disallowing passive losses set forth in 26 U.S.C. § 469. Section 469(*l*) states:

The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out such provisions of this section, including regulations—

(1) which specify what constitutes an activity, material participation, or active participation for purposes of this section,

(2) which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income),

(3) requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity....

26 U.S.C. § 469(*l*); *see also Krukowsi v. Comm'r of Internal Revenue,* 279 F.3d 547, 552 (7th Cir.2002) (holding that 26 U.S.C. § 469(*l*) is a constitutional delegation of legislative power and that Congress

---

**4.** *See* 26 U.S.C. § 469(a)(2).

**5.** The Code defines "passive activity loss" as "the amount (if any) by which the aggregate

losses from all passive activities for the taxable year, exceed the aggregate income from all passive activities for such year." *Id.* § 469(c)(2).

has provided an "intelligible principle" to guide the Secretary of the Treasury's regulations).

Pursuant to this statute, the Secretary of the Treasury has promulgated Treasury Regulation § 1.469–4, which states in relevant part, that, "[o]ne or more trade or business activities or rental activities may be treated as a single activity if the activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469." Treas. Reg. § 1.469–4(c). In other words, if Plaintiffs can group CEL and DIS as a single activity, the IRS will not consider CEL's activities as passive, and Plaintiffs may claim the $80,601 in question as a non-passive loss.

Treasury Regulation § 1.469–4(c)(2) states:

> whether activities constitute an appropriate economic unit and, therefore, may be treated as a single activity depends upon all the relevant facts and circumstances. A taxpayer may use any reasonable method of applying the relevant facts and circumstances in grouping activities. The factors listed below, not all of which are necessary for a taxpayer to treat more than one activity as a single activity, are given the greatest weight in determining whether activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469—
>
> (i) Similarities and differences in types of trades or businesses;
>
> (ii) The extent of common control;
>
> (iii) The extent of common ownership;
>
> (iv) Geographical location; and
>
> (v) Interdependencies between or among the activities (for example, the extent to which the activities purchase or sell goods between or among themselves, involve products or services that are normally provided together, have the same customers, have the same employees, or are accounted for with a single set of books and records).

Treas. Reg. § 1.469–4(c)(2).

■ In applying the above factors, it appears that CEL and DIS may be grouped as an appropriate economic unit, as defined in Treasury Regulation § 1.469–4(c). Both companies have their place of business in El Paso, Texas. In addition, while CEL and DIS engage in different kinds of business, CEL's leasing of medical equipment to DIS is a complimentary business to that performed by DIS. *See, e.g.*, Treas. Reg. § 1.469–4(c)(3) Example 2 (permitting a taxpayer to group his wholesale and trucking businesses when common control and interdependencies exist). Moreover, while CEL and DIS are not jointly owned and controlled by all the same parties, CEL's owners are the same owners of FLM Enterprises, LLC, the general partner of DIS, demonstrating that joint ownership and control exists. Joint Ex. 1; Joint Ex. 6; Joint Ex. 17 at 193. Moreover, both CEL and DIS were established at the same time by the same person—Plaintiff Leroy Candelaria's attorney—and were established separately primarily to limit tort liability and address financing services. *Cf. Gregg*, 186 F.Supp.2d at 1132, (quoting Staff of the Joint Comm. on Taxation, 100th Cong., General Explanation of the Tax Reform Act of 1986, 87 CIS J 86215, at 247) ("the fact that two undertakings are conducted by different entities does not establish that they are different activities"). Perhaps most importantly, however, is that CEL's sole reason for existence is to provide medical equipment to DIS and to operate exclusively for the benefit of DIS. As such, CEL demonstrates a clear dependency on DIS for all its business, and DIS currently looks to CEL for all its equipment. *See* Aff. Leroy Candelaria, Joint. Ex. 22 ("All of the equipment owned by CEL has been leased to DIS since its creation. The only

equipment DIS uses is that which is leased to CEL.").

Given the above facts and circumstances, the Court holds that Plaintiff may group CEL and DIS as an "appropriate economic unit," pursuant to Treasury Regulation § 1.469–4(c).

### 3. Treasury Regulation § 1.469–4(d) and the "insubstantial" limitation.

However, Treasury Regulation § 1.469–4(c) is not the end of the analysis. Treasury Regulation § 1.469–4(d) places certain relevant limitations on which types of activities a taxpayer may group for passive/non-passive activity purposes:

**Grouping rental activities with other trade or business activities—(i) Rule.** A rental activity may not be grouped with a trade or business activity unless the activities being grouped together constitute an appropriate economic unit under paragraph (c) of this section **and—**

(A) The rental activity is insubstantial in relation to the trade or business activity;

(B) The trade or business activity is insubstantial in relation to the rental activity; or

(C) Each owner of the trade or business activity has the same proportionate ownership interest in the rental activity, in which case the portion of the rental activity that involves the rental of items of property for use in the trade or business activity may be grouped with the trade or business activity.

Treas. Reg. § 1.469–4(d) (emphasis added).

In the instant case, neither party argues that DIS's business activity is insubstantial in relation to CEL's rental activity. Nor does either party argue that each owner of DIS has the same proportionate ownership interest in CEL. Therefore, according to Treasury Regulation 1.469–4(d), CEL and DIS may be grouped as a single economic unit and thus be eligible for non-passive-loss status *if and only if* CEL's rental activities are "insubstantial" in relation to those of DIS. *See* Treas. Reg. § 1.469–4(d)(1)(A).

### 4. Statutes on what constitutes "insubstantial"

The Treasury Regulations do not define the term "insubstantial" in the context of comparing rental and other business activities. Looking to other statutes that use the term in a non-business sense, Federal Trade Commission Practice Rules have described activities as "insubstantial" when they are "peripheral" or not otherwise "critical." 16 C.F.R. § 4.1. Whereas, in the realm of wage and hour law, the term "insubstantial" is synonymous with "de minimus," and is determined using a "totality of the circumstances" test. *See generally Frank v. Wilson & Co.*, 172 F.2d 712 (7th Cir.1949); Les A. Schneider & J. Larry Stine, Wage and Hour Law: Compliance and Practice, 1 Wage and Hour Law § 6:5 (2007).

Using a more quantitative analysis, the Secretary of the Treasury originally promulgated the "80/20 Test" with regards to grouping rental and non-rental activities. *See* Temp. Treas. Reg. § 1.469–4T. The "80/20 Test" stated that rental and non-rental entities may be grouped as a single undertaking "if more than 80 percent of the income of the undertaking determined under the basic rule is attributable to one class of operations (i.e., rental or nonrental)." Temp. Treas. Reg. § 1.469–4T(a)(3)(iv); *see also Id.* § 1.469–4T(d)(2)(ii) ("operations normally treated as separate activities may be treated as one if [l]ess than 20 percent of the gross income ... is attributable to rental operations"). In other statutes and regulations, the term "insubstantial" has been used to refer to an amount as little as 2 and as

much as 35 percent of a given value. For example, prior to 2006, § 1815 of Title 12 of the United States Code stated that a conversion transaction affects an "insubstantial" portion of the total deposits of an insured depository institution when it does not exceed 35 percent of the total deposits plus net interest of the institution during a certain period. 12 U.S.C. § 1815(d). On the other hand, the IRS Revenue Procedure states that benefits received in connection with payment to a charity will be considered to have "insubstantial" fair market value if the value is not more than 2 percent of the payment or is otherwise a token item. Rev. Proc. 90–12, 1990–1 C.B. 471 (February 6, 1990). Using these statutes and regulations as comparisons, it therefore appears that the 80/20 Test is an appropriate representation of what constitutes "insubstantial" with regards to income as the test's percentages fall within the range used in these other statutes and regulations.

However, Temporary Treasury Regulation § 1.469–4T is no longer in place and "the final regulations do not adopt a bright-line or safe harbor gross revenue test." TD 8565, 1994–43 I.R.B. 4. (Limita-

tion on passive activity losses and credits). Instead, the Secretary states that the regulations "adopt a facts-and-circumstances test that looks at all of the pertinent factors" when determining insubstantiality.[6] *Id.* Accordingly, the Court will look to all the facts and circumstances and weigh all pertinent factors in determining what constitutes an "insubstantial" business activity.[7] In doing so, the Court will continue to employ the 80/20 Test when comparing incomes. However, the Court will treat the resulting analysis as only one "pertinent factor" to consider in determining the larger question of whether a rental activity is insubstantial in relation to a trade or business activity. The question remains what other "pertinent factors" the Court should look to in determining the meaning of insubstantial.

## 5. Case law on what constitutes "insubstantial."

There is currently very little case law on the statutory meaning of "insubstantial" as it is specifically used in Treasury Regulation § 1.469–4(d)(1). The Court has found only two cases that have addressed the question of whether a rental activity was insubstantial to another business activity,[8]

---

6. At first glance, it appears the Secretary is referring to Treasury Regulation § 1.469–4(c)(2)'s "facts and circumstances test" when it states that the regulations "already adopt a facts-and-circumstances test[.]" TD 8565, 1994–43 I.R.B. 4. However, the context of the quoted passage demonstrates the intention of the Secretary to apply a "facts and circumstances test" to "insubstantial" as well as to what constitutes "an appropriate economic unit." Because Treasury Regulation 1.469–4(c)(2) outlines specific factors to determine what constitutes "an appropriate economic unit," and not whether a business, trade or rental activity is "insubstantial," the Court holds, therefore, that a separate facts-and-circumstances test applies to what constitutes "insubstantial." This test weighs factors that are pertinent to the meaning of "insubstantial" and not necessarily those outlined in Treasury Regulation § 1.469–4(c).

7. Using a "facts and circumstances" test to determine what constitutes "insubstantial" is similar to the "totality of the circumstances" test derived from the analysis the *Frank* court employs for determining "insubstantial" in the context of wage and hour law. *See Frank,* 172 F.2d at 716; 1 Wage and Hour Law § 6:5. Moreover, Treasury Regulation § 1.469–4(c) also employs a "facts and circumstances" test in determining what constitutes an "appropriate economic unit" for purposes of tax exemptions. Treas. Reg. § 1.469–4(c)(2).

8. A third case, *Sciabica v. Commissioner of Internal Revenue,* No. 9392–01S, 2002 WL 31526514 (U.S.Tax Ct. Nov. 13, 2002) addresses the question of whether a rental activity is "insubstantial" in relation to another business activity, but the case provides no

and only one of these the Court may look to as a precedent.[9] However, both cases are instructive and provide guidance as to what "pertinent factors" the Court should apply when determining whether a business or rental activity is "insubstantial."

The first case, *Glick v. United States,* involved an apartment management corporation which managed a series of apartments on behalf of over a hundred partnerships. *Glick v. United States,* 96 F.Supp.2d 850, 852 (S.D.Ind.2000). The plaintiffs in *Glick* owned an interest in both the management corporation and in most of the partnerships. *Id.* When the IRS refused to allow the plaintiffs to claim a passive loss deduction for two years and assessed a deficiency against them, the plaintiffs paid the deficiency and then filed a claim for a refund. *Id.* at 853.

The parties in *Glick* stipulated that all the partnerships were involved in "rental activities" that would ordinarily constitute "passive" activities for purposes of § 469. The parties also stipulated that the partnerships together with the management corporation constituted an "appropriate economic unit" for purposes of Treasury Regulation § 1.469–4(c). *Id.* at 855. The issue in *Glick*—as is the issue before the Court today—was whether one business's activity was "insubstantial" in relation to the activity pursuant to Treasury Regulation § 1.469–4(d).

The *Glick* court first looked to the legislative history to discern Congress's reasons in creating the passive loss rule in 26 U.S.C. § 469. *Id.* at 855–56. The court concluded that Congress did not intend to remove all tax preferences when it passed § 469; rather the preferences "must be directed primarily to taxpayers with a substantial and bona fide involvement in the activities to which the preferences relate." *Id.* at 856 (citing Report No. 99–313, Report of the Senate Finance Committee Accompanying Section 469 (1986)). "Congress's stated goal was that '[t]he determination of what constitutes a separate activity ... be made in a *realistic economic sense* '" and to " 'disregard' the legal status and examine the underlying activities involved." *Id.* (emphasis added in *Glick* ).

As the Court did in the instant case, the *Glick* court also looked to preamble of the Treasury Regulations, where the Secretary stated that "in determining whether the activities are insubstantial in relation to each other, we are to 'look[ ] at all of the pertinent factors.' " *Id.* (citing Limitation on Passive Activity Losses and Credits—Definition of Activity, 59 Fed.Reg. 50485–86 (1994)).[10] By examining "all of the pertinent factors" to get a "realistic economic sense" of the relationship between the two businesses, the *Glick* court proceeded to look at both qualitative and quantitative factors in determining what "insubstantial" entailed.

#### a. Qualitative factors

In determining insubstantiality, The *Glick* court looked first to "qualitative factors," such as the management corporation's role in relation to the partnerships and the impetus for the management corporation's formation. *Glick,* 96 F.Supp.2d at 856–58. The court noted that the two entities "worked as an interrelated and integrated single business unit, rather than as two distinct entities who happened to provide services to each other." *Id.* at 857. In addition, the two entities utilized a single accounting system with the day-to-

---

analysis and thus little guidance on the matter.

9. More on this limitation, *infra.*

10. This Court has referred to the same text, *supra,* from which it derived the "facts-and-circumstances" test. *See* TD 8565, 1994–43 I.R.B. 4.

day operations of the Partnerships and the management corporation run by one set of employees. *Id.* In language describing facts very similar to those of the instant case, the *Glick* court stated:

GBG [the management activity] had no role beyond providing services for the Partnerships. It was subservient to and totally dependent upon the Partnerships for its revenue as well as its existence. Indeed, GBG had no income outside the management fees paid to it by the Partnerships, making the activities of GBG insubstantial in relation to those of the Partnerships.

*Id.*

In conclusion, the Glick court saw the two businesses as "so substantially intertwined that to separate their income for tax purposes would unfairly deny them the benefits of § 469's limitations." *Id.* at 858.

■ In the instant case, Defendant argues that *Glick* was wrongly decided. Def.'s Cross–Mot. 5. Moreover, Defendant argues that a ruling holding two companies to be "substantially intertwined" and yet "insubstantial" to each other is contradictory. *Id.* The Defendant further argues that when one company is the sole source of revenue for another, as is the case of DIS and CEL, "qualitatively, nothing could make the entities more 'substantial' to each other." Def.'s Cross–Mot. 5. Defendant's argument purports too much. The Court agrees that the activity of one company who is the other company's sole source of revenue is likely substantial to the activity of latter company. However, it does not necessarily follow that the latter company's business activity is substantial to the former. In other words, a rental company that rents all its equipment to a service company will undoubtedly find the service company's activity substantial in comparison. But the service company may nonetheless find the rental company's activity insubstantial if the business involves multiple services, serves multiple clients or employs the rental company's equipment as only part of its business. This may be true even if the two businesses work in a "substantially intertwined" fashion. Thus, while one company's business may be substantial to another, the latter's may remain insubstantial to the former. Fortunately for Plaintiff, Treasury Regulation 1.469–4(d) allows for either. *See also Glick,* 96 F.Supp.2d at 859 (holding that "GBG's 'essential' role in the affairs of the Partnerships does not foreclose its being characterized as insubstantial in relation to the activity of the Partnerships").

Looking to the facts and circumstances of the instant case, at least qualitatively, CEL's rental activity is insubstantial to that of DIS. CEL's sole reason for existence is to serve DIS. Its entire business consists of holding title to equipment which it in turn leases to DIS. It has no employees, provides no services to the community, and has no customers other than DIS. *See* Aff. of John Broaddus, CPA for CEL, Joint Ex. 18; Aff. of Gregory J. Rzycki, CPA for CEL, Joint Ex. 20. Ultimately, if DIS were to go out of business, CEL would have likely cease to exist. It would be like a hat without a head to be put on.

On the other hand, DIS has approximately forty-five employees, operates out of three different locations and provides services to the community at large. *See* Aff. of Leroy Candelaria, Joint. Ex. 22. DIS's business is not just to produce a raw product generated by CEL's equipment but to provide services to the community in connection with the equipment. Moreover, while DIS does rent all of its radiological equipment from CEL, the equipment is a fungible commodity, ultimately replaceable on the open market. CEL's rental activity therefore appears to be only a peripheral and not a critical component

of DIS's business activity. If CEL were to cease functioning, DIS would likely continue as a business and find another equipment supplier. The head would just be choosing another hat.

Finally, the facts show that CEL and DIS were formed to operate as one sole business entity. *See* Aff. of Leroy Candelaria, Joint Ex. 22; Aff. of Karin Armen Carson, Joint Ex. 21. The managing partner in both companies—namely the Plaintiff Leroy Candelaria—was the same person who originally directed their formation and did so for the same purpose. *Id.* As in *Glick*, to separate the two for tax purposes would appear to run contrary to the intent of § 469's exceptions.

The only other case addressing "qualitative factors" that the Court finds potentially relevant to the question of insubstantiality is *Schumacher v. Commissioner of Internal Revenue*, a United States Tax Court Case decided in 2003. *Schumacher v. Comm'r of Internal Revenue*, No. 18776–02S, 2003 WL 21701146, at *1 (U.S.Tax Ct. July 23, 2003).[11] In *Schumacher*, the petitioner leased aircraft and parts to an S corporation in which petitioner owned a majority interest. *Id.* at *1. The corporation's business activities were primarily aircraft charter services, flight training rental and sales. *Id.* Petitioner's rental activity consisted entirely of renting to the corporation. *Id.* In comparing whether the two business activities were insubstantial to each other, the court found that "the most significant fact in this case is that petitioner created and operated the leasing activity solely for [the charter company's] benefit." *Id.* The court found that the petitioner "spent very little time" with the leasing activity compared with the very "substantial" time he spent with the aircraft charter business. *Id.* Moreover, the leasing activity's sole purpose was to enhance the charter service's ability to generate business; it was not designed to provide an income stream independent from the charter service. *Id.* Therefore, the court in *Schumacher* found the leasing activity "insubstantial" in comparison. *Id.* at *5.[12]

In comparing *Schumacher* to the instant case, a similar situation exists to that of the aircraft leasing activity and the charter service. Like the leasing activity in *Schumacher*, CEL's rental activity was started solely for DIS's benefit. CEL continues to exists for no other purpose than to enhance DIS's business activities, and has no source of income other than DIS. Moreover, the facts demonstrate that Plaintiffs spends minimal time conducting the leasing activity in comparison to the continuing and robust business activity of DIS.[13]

---

11. *Schumacher* was decided pursuant to § 7463(b) of the Internal Revenue Code, which states that "[a] decision entered in any case in which the proceedings are conducted under this section shall not be reviewed in any other court and shall not be treated as a precedent for any other case." 26 U.S.C. § 7463(b). Nevertheless, the Court will look to this case for potential guidance on how another court has dealt with similar issues.

12. The court in *Schumacher* also found that a comparison of the asset value of the two activities "was not determinative for the particular facts of this case." *Id.* at *4. Given that the facts of the case are different from those of the instant case (the charter service leased equipment from multiple sources, whereas DIS leased only from CEL), *Schumacher* is not instructive on this point.

13. According to Plaintiff Leroy Candelaria, "[t]his is how the mechanics worked. As managing partner of DIS, I would write a rent check to CEL each month. As managing partner of CEL, I would deposit that check in CEL's bank account and make its loan payment on the purchased equipment to its lend-

Given these circumstances, it appears once again that, at least qualitatively, CEL's business activity is insubstantial to that of DIS.

### b. Quantitative factors

In addition to qualitative factors, the *Glick* court also looked to "quantitative factors" in determining insubstantiality. *Glick*, 96 F.Supp.2d at 859–61. These factors included gross income and fair market asset value. *Id.* While the *Glick* court acknowledged that "insubstantiality" cannot be reduced to a "simple comparison of gross incomes," it pointed out that "the IRS itself considers Treasury Regulation section 1.469–4T's '80/20' gross income test to be 'a good starting point' when deciding whether a rental activity is insubstantial in relation to trade or business activity, or vice versa." *Id.* at 859–60 (citing IRS, Section 469–Passive Loss Limitations: Market Segment Specialization Program (MSSP) Guide on Passive Losses (April 27, 1994), 94 TAX NOTES TODAY). The *Glick* court declined to decide whether net income was a "pertinent" factor in determining insubstantiality, but did so "primarily because neither party has seen fit to provide the net income comparisons on an entity level." *Id.* at 861 n. 13. In the instant case, however, the parties have provided such information, and the Court finds that a comparison of net income— along with that of gross income—are "pertinent factors" in determining insubstantiality.

■ The following is a comparison of the parties' calculations of gross receipts, net income, and total assets in the instant case:

TABLE 1

| 2002 [14] | Plaintiff's Calculations | | | Defendant's Calculations | | |
|---|---|---|---|---|---|---|
| | CEL | DIS | % [15] | CEL | DIS | % |
| Gross Receipts | $220,000 | $6,342,251 | 3.4 | $ 220,000 | $1,750,547 [16] | 11 |
| Net Income | ($634,965) | $ 470,492 | - | $ 0–74,826 | $ 470,492 | 16 |
| Total Assets | $926,567 | $ 768,689 | 55 | $1,640,208 [17] | $ 776,676 | 68 |

Starting with gross income, it is clear that whether the Court uses Plaintiffs' or Defendant's calculations, CEL's gross income is insubstantial when compared with that of DIS or when included as a percentage of their business activities as a whole.

Plaintiffs' calculations stem directly from comparing CEL's total gross rents and DIS's gross receipts for sales for 2002. In such case, CEL's income accounts for 3.4 percent of CEL's and DIS's total income for the year. Even if the Court deducts

ers. That is the only activity of CEL to this date." Affidavit, Leroy Candelaria, Joint Ex. 22.

14. Both parties have also provided information in the joint exhibits and their arguments concerning CEL's and DIS's income, assets, etc. for the years 2002–2006. Joint Exs. 2–5, 7–10. However, both parties have also agreed that such information is immaterial to the issue at hand. As such, the Court will disregard this additional information as irrelevant.

15. This is CEL's percentage in comparison to the combined whole of CEL and DIS.

16. Defendant has subtracted out DIS's contractual adjustments to its billings to determine DIS's gross receipts or sales. Def.'s Cross–Mot. 7 n. 2.

17. These calculations "omit[ ] depreciation and amortization" since, according to Defendant, "these deductions do not reflect true expenses, but are rather deductions created by the Tax Code." Def.'s Cross–Motion 7 n. 1.

for DIS's "contractual adjustments" in its gross receipts, as Defendant does, CEL's income still only accounts for 11 percent of the combined income. This amount is clearly within the 80/20 Test originally promulgated by the Department of the Treasury and demonstrates that CEL's gross income was insubstantial to that of DIS.[18]

Looking next to the two entities' net income, CEL's business activity in this respect appears to be negligible. Whether looking at CEL's net income as characterized by Plaintiffs, who take into account the depreciation and amortization of CEL's assets, or looking at Defendant's calculations, who considers depreciation and amortization as "not reflect[ing] true expenses," both figures show CEL's net income easily pass the 80/20 test. Plaintiff's calculations show CEL's net income as a negative amount, stating that CEL lost money in 2002. Meanwhile, Defendant places CEL's net income between zero and 16 percent.

Defendant argues, however, that a comparison of the two business's taxable income—net or gross—is not a proper test for comparing whether one company's business activity is substantial to the other. Def.'s Reply 3. Rather, Defendant argues the Court should consider CEL's asset value, which Defendant states is clearly substantial in comparison to that of DIS. Def.'s Cross–Mot. 7. Whether accounting for depreciation and amortization or through simple comparison, Defendant argues that CEL's assets have greater value than those of DIS, making CEL's business activity substantial. Plaintiff argues, however, that all of CEL's assets are fully leveraged, were financed using Plaintiffs' personal guarantee and the DIS lease, and have a fair market value of essentially zero. Pls.' Resp. 9. See also Aff. of John Broaddus, CPA for CEL, Joint Ex. 18; Aff. of Gregory J. Rzycki, CPA for CEL, Joint Ex. 20.

The Court agrees with Defendant that a comparison of the two companies' assets is a relevant factor in determining insubstantiality. However, the Court disagrees with the Defendant that asset value is the *only* factor the Court should consider. Moreover, because all other factors point to CEL's business being insubstantial in comparison to that of DIS, even a finding that CEL's assets are substantial does not persuade the Court that CEL's overall business activity is anything more than insubstantial in comparison to that of DIS.[19] As the *Glick* court stated, "[w]e do not view our role as merely to place factors on a

---

**18.** The Defendant appears to concede this point. In its initial refusal describing why it disallowed the Plaintiff's loss, the IRS acknowledged that "[DIS] had gross income in excess of $6,562,000" and that "[CEL's] only income for the year was $220,000 received for the rent of the equipment to [DIS]." Form 886A Explanation of Items, Joint Ex. 17 at 70. "Based on these figures alone," the IRS continued, "it would appear that [CEL] would be insubstantial compared with DIS. However, the cost of the assets purchased by [CEL] that were leased to [DIS] was in excess of $1,621,000, and this does not appear insubstantial." *Id.*

**19.** Nor is the Court convinced that CEL's assets are substantial in comparison to DIS.

The affidavits cited above indicate all of CEL's assets are highly leveraged and have a fair market value of zero, assertions that Defendant fails to challenge with any evidence in the record. Moreover, despite his frequent use of colloquial and inappropriate language, Plaintiffs' counsel is correct that the ultimate inquiry regarding substantiality is not market value but business activity. Mere passive rental of high-value highly-leveraged assets does not by itself render the lease activity substantial in relation to the conduct of an active trade or business by a business entity. The Regulations, case law, and this Court's analysis demonstrate there are other pertinent factors to consider.

scale and see which come up higher; rather, we must attempt to obtain a 'realistic economic sense' of the relationship between" the two business entities. *Glick,* 96 F.Supp.2d at 861 n. 13.

### 6. Treasury Regulation § 1.469–4(d) Example 1

As a final argument, Defendant points to Example 1 under Treasury Regulation § 1.469–4(d) as evidence that Congress never intended for businesses like CEL and DIS to be grouped as a single activity. Example 1 states:

**Example 1.** (i) H and W are married and file a joint return. H is the sole shareholder of an S corporation that conducts a grocery store trade or business activity. W is the sole shareholder of an S corporation that owns and rents out a building. Part of the building is rented to H's grocery store trade or business activity (the grocery store rental). The grocery store rental and the grocery store trade or business are not insubstantial in relation to each other. (ii) Because they file a joint return, H and W are treated as one taxpayer for purposes of section 469. See § 1.469–1T(j). Therefore, the sole owner of the trade or business activity (taxpayer H–W) is also the sole owner of the rental activity. Consequently, each owner of the trade or business activity has the same proportionate ownership interest in the rental activity. Accordingly, the grocery store rental and the grocery store trade or business activity may be grouped together (under paragraph (d)(1)(i) of this section) into a single trade or business activity, if the group-

ing is appropriate under paragraph (c) of this section.

Treas. Reg. § 1.469–4(d)(ii).

Defendant states that just as the grocery store rental and the grocery store trade or business are not insubstantial in relation to each other, neither is CEL's rental activity insubstantial to the activity of DIS. Def.'s Cross–Mot. 6. It appears, however, that paragraph (i) of this example is simply a recitation of the facts and legal predicates for paragraph (ii). There is no analysis as to why the two businesses are "insubstantial" to each other, e.g., how much of the building the S corporation inhabits, how much revenue it generates for the landlord, a comparison of the company's assets, etc. Rather, it appears that the example presents the businesses being not "insubstantial" to each other as a factual and legal predicate for the analysis to follow. If the Court were to interpret paragraph (i) to stand alone and its final sentence to be a legal conclusion, then any business or trade activity which rents from a rental company would find its business activity as "not insubstantial" to the rental activity (and vice versa), regardless of how much business activity either entity is engaged in.[20] The Court therefore treats paragraph (i) as a factual and legal predicate for paragraph (ii).[21]

In the final analysis, DIS is a rapidly expanding enterprise with multiple employees, three business locations and a provider of various services to the community at large. It provides its services in conjunction with, but not exclusively dependent upon, its continued lease of equipment from CEL. On the other hand, CEL

---

**20.** It is also interesting to note that while both the *Glick* and *Schumacher* courts based their rulings on their interpretations of "insubstantial" as it is referred to in 1.469–4(d), neither court considered this example relevant enough to even apply it.

**21.** Even if the Court were to consider the last sentence of paragraph (i) to be a legal conclusion, the facts presented bear little resemblance to those before the Court. As such, this example is inapposite to the instant case.

is a company with no employees, one client, and a gross income and net income that each represent less than 20 percent of the combined totals of the two companies. Moreover, CEL's sole rental activity for 2002 consisted of leasing leveraged and depreciating medical equipment to DIS which DIS is obligated under contract to maintain until 2007. *See* Equipment Lease Agreement, Joint Ex. 5. CEL effectively performed this activity in a one-time business transaction and appears to have done nothing since. *Id. See also* Aff. of Leroy Candelaria, Joint Ex. 22. Given these facts, the Court's realistic economic sense of the situation is that CEL's rental activity is insubstantial in relation to DIS's business activity for the year 2002. Moreover, given the facts and circumstances of the instant case, the Court also holds that CEL and DIS may properly be grouped as an appropriate economic unit for purposes of Treasury Regulation 1.469–4(c). As such, the Plaintiffs' losses are non-passive and fall within an exception to 26 U.S.C. § 469. The IRS therefore improperly disallowed Plaintiffs' $80,601 refund for 2002.

## III. CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 21) is **GRANTED** and Defendant's Cross–Motion for Summary Judgment (Doc. No. 22) is **DENIED.** The hearing previously set for October 19, 2007 is **CANCELLED.**

The Clerk shall close the case.

**SO ORDERED.**