T.C. Memo. 2009-79

UNITED STATES TAX COURT

CARLOS A. AND ANA MARIA SENRA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10540-06.                    Filed April 15, 2009.

P-H owned 86.75 percent of Keys Granite, a C
corporation, and 100 percent of Keys Holdings, a
limited liability company that was treated as a
disregarded entity for tax purposes.  Keys Holdings
rented property to Keys Granite.  On their 2001 and
2002 tax returns, Ps reported losses from Keys
Holdings' rental activity and offset those losses
against wages they received from Keys Granite.  R
disallowed the losses pursuant to sec. 469, I.R.C.
1986.

Ps contend their activities in Keys Granite and P-
H's activity in Keys Holdings constitute an appropriate
economic unit that may be treated as a single activity
for purposes of measuring gain and loss under sec. 469,
I.R.C. 1986.

<u>Held</u>:  Because Keys Granite is "a C corporation
subject to section 469", Ps may group their activities
in Keys Granite with P-H's activities in Keys Holdings

"but only for purposes of determining whether the taxpayer [P-H] materially or significantly participates in" P-H's activities in Keys Holdings.  Sec. 1.469-4(d)(5)(ii), Income Tax Regs. (emphasis added).  Because in this case P-H's activities in Keys Holdings are passive even if he materially participated in them, the regulation precludes grouping these activities with Ps' activities in Keys Granite for purposes of offsetting the passive losses from Keys Holdings against Ps' nonpassive wage income from Keys Granite. Sec. 469, I.R.C. 1986.

Robert L. Trescott and Joshua E. Schoen, for petitioners.

Justin L. Campolieta, for respondent.

MEMORANDUM OPINION

CHABOT, Judge:  Respondent determined deficiencies in Federal individual income taxes against petitioners as follows:

| Year | Deficiency |
|------|------------|
| 2001 | $34,917 |
| 2002 | 43,087 |

The issue for decision is whether petitioners are permitted to group their activities in a C corporation with petitioner husband's activities in a disregarded entity to form an appropriate economic unit that may be treated as a single activity for purposes of measuring gain and loss under section 469.[1]

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for the years in issue.

(continued...)

## Background

The instant case was submitted fully stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.[2]

When the petition was filed in the instant case, petitioners resided in Florida.

During 2001 and 2002 petitioner Carlos Senra (hereinafter sometimes referred to as Carlos) was an 86.75-percent shareholder of Keys Granite, Inc. (hereinafter sometimes referred to as Keys Granite), a C corporation.[3]  Carlos also served as president of Keys Granite in 2001 and 2002.  During these years Carlos and petitioner Ana Maria Senra (hereinafter sometimes referred to as Ana Maria) were employees of Keys Granite; they received, and reported on their tax returns, wages from Keys Granite as shown in table 1.

---

[1](...continued)
Petitioners do not dispute the correctness of the deficiency amounts if we hold for respondent on the issue for decision.

[2]The instant case was filed as a small tax case under sec. 7463.  Before the case was submitted, petitioners filed a motion to remove the case from small tax case status, respondent stated no objection, and the Court granted the motion.  Accordingly, the instant case was submitted and has been treated as a "regular" case.

[3]The record does not show who owned the remaining 13.25 percent of Keys Granite; this does not appear to affect the results or analyses.

Table 1

|  | Amounts | |
| Year | Carlos | Ana Maria |
| 2001 | $494,485 | $86,977 |
| 2002 | 329,471 | 65,141 |

During these years Keys Granite was solely in the business of the retail sale of granite and marble.

Also during 2001 and 2002 Carlos owned 100 percent of Keys Holdings and Investments Co., LC (hereinafter sometimes referred to as Keys Holdings), a single-member limited liability company, a disregarded entity for Federal income tax purposes. Petitioners reported all of Keys Holdings' income and expenses on Schedule C, Profit or Loss From Business, of their 2001 and 2002 tax returns. During these years Keys Holdings' only tangible business asset was a warehouse in Miami, Florida, and a tract of land on which the warehouse was situated (hereinafter sometimes collectively referred to as the Miami property). During these years Keys Holdings rented the Miami property solely to Keys Granite; this rental activity was Keys Holdings' only business activity, and Keys Granite used the Miami property solely as a place to store its inventory and as a showroom where its potential customers could view that inventory. During these years Keys Granite paid rent to Keys Holdings for the use of the Miami property; Keys Holdings was engaged in a rental activity within the meaning of section 469(j)(8). See infra note 5.

Table 2 shows the Keys Holdings income, expenses, and net losses petitioners reported on the Schedule C of their 2001 and 2002 tax returns.

### Table 2

|  | 2001 | 2002 |
|---|---|---|
| Income | $324,000 | $432,000 |
| Expenses | 410,701 | 544,328 |
| Net (Loss) | ( 86,701) | ( 112,328) |

All of the income shown in table 2 for both years was rental income paid by Keys Granite to Keys Holdings with respect to Keys Granite's rental of the Miami property.

### Discussion[4]

1.  Parties' Contentions

Respondent does not dispute the correctness of the numbers on petitioners' Schedules C, nor Keys Holdings' status as a disregarded entity. See supra table 2. Petitioners do not contend Keys Holdings' losses are deductible against any income other than petitioners' compensation income from Keys Granite. See supra table 1. Both sides deal only with the application of

---

[4]Sec. 7491, relating to burden of proof, was not drawn into issue by either side; accordingly, the burden of proof remains on petitioners. See Rule 142(a). Also, the parties' presentation of the instant case fully stipulated does not change the burden of proof or the effect of a failure of proof. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

section 469 to the instant case, and so will we. See <u>Estate of Fusz v. Commissioner</u>, 46 T.C. 214, 215 n.2 (1966).

Petitioners contend (1) the activities conducted by Keys Granite and the activities conducted by Keys Holdings are related activities; (2) these activities constitute an appropriate economic unit and therefore a single activity; and (3) Carlos's ownership of both of these activities results in Carlos's being permitted to net his Keys Holdings losses against his and Ana Maria's Keys Granite wages.

Respondent contends (1) the losses of Keys Holdings result from a rental activity, which is a passive activity, and so these losses can be deducted only against passive income; (2) petitioners did not have any passive income (other than the rental receipts of Keys Holdings); and so (3) petitioners are not permitted to net the Keys Holdings losses against Carlos's wages or any other income of petitioners.

Both sides direct our attention to section 1.469-4, Income Tax Regs. Respondent contends section 1.469-4(d)(5)(ii), Income Tax Regs., permits the grouping of a C corporation's activities with another activity of the taxpayer, <u>but only for</u> purposes of determining whether the taxpayers materially or significantly participates in the other activity. Respondent contends that, because Keys Holdings is a rental activity, which is per se a passive activity regardless of the extent of Carlos's

participation, it follows that the regulation's limited material participation exception does not apply, and so all that remains is the regulation's prohibition on the grouping of Keys Granite's activities with the activities of Keys Holdings for any other purpose under section 469. Petitioners contend that the prohibitions of section 1.469-4(d)(5)(ii), Income Tax Regs., apply only to the grouping of <u>un</u>related activities, and that related activities that constitute an appropriate economic unit may be grouped so as to consider such grouped activities as a single activity under section 1.469-4(c)(2), Income Tax Regs.

We agree with respondent's conclusion and much of respondent's analysis.

## 2. The Statutory Framework

In general, section 469[5] provides that losses from passive

---

[5]Sec. 469 provides, in pertinent part, as follows:

SEC. 469. PASSIVE ACTIVITY LOSSES AND CREDITS LIMITED.

(a) Disallowance.--

(1) In general.--If for any taxable year the taxpayer is described in paragraph (2), neither--

(A) the passive activity loss, nor

(B) the passive activity credit,

for the taxable year shall be allowed.

(2) Persons described.--The following are described in this paragraph:

(continued...)

           (A) any individual, estate, or trust,

           (B) any closely held C corporation, and

           (C) any personal service corporation.

     \*     \*     \*     \*     \*     \*     \*

(c) Passive Activity Defined.--For purposes of this section--

    (1) In general.--The term "passive activity" means any activity--

        (A) which involves the conduct of any trade or business, and

        (B) in which the taxpayer does not materially participate.

    (2) Passive activity includes any rental activity.--Except as provided in paragraph (7), the term "passive activity" includes any rental activity.

     \*     \*     \*     \*     \*     \*     \*

    (4) Material participation not required for paragraphs (2) and (3).--Paragraphs (2) and (3) shall be applied without regard to whether or not the taxpayer materially participates in the activity.

     \*     \*     \*     \*     \*     \*     \*

(d) Passive Activity Loss and Credit Defined.--For purposes of this section--

    (1) Passive activity loss.--The term "passive activity loss" means the amount (if any) by which--

        (A) the aggregate losses from all passive activities for the taxable year, exceed

(continued...)

activities for a year may offset only income from passive

activities for that year; losses so disallowed may be carried

---

[5](...continued)

           (B) the aggregate income from all passive activities for such year.

         *     *     *     *     *     *     *

    (j) Other Definitions and Special Rules.--For purposes of this section--

         *     *     *     *     *     *     *

      (8) Rental activity.--The term "rental activity" means any activity where payments are principally for the use of tangible property.

         *     *     *     *     *     *     *

    (l) Regulations.--The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out provisions of this section, including regulations--

      (1) which specify what constitutes an activity, material participation, or active participation for purposes of this section,

      (2) which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income),

      (3) requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity,

      (4) which provide for the determination of the allocation of interest expense for purposes of this section, and

      (5) which deal with changes in marital status and changes between joint returns and separate returns.

over to later years.  The term "passive activity" is broadly defined in section 469(c)(1) as any activity involving the conduct of a trade or business and in which the taxpayer does not "materially participate."  But rental activities are passive regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).

Section 469(j)(8) provides that, for purposes of section 469, any activity where payments are principally for the use of tangible property is a rental activity.  The parties have stipulated--and we have found--that during 2001 and 2002 Keys Holdings was engaged in a rental activity within the meaning of section 469(j)(8).  It is clear from the record herein (and neither side suggests the contrary) that all of Keys Holdings' losses in 2001 and 2002 were from a rental activity and thus, by operation of the statute, were losses from passive activities.

3.  <u>The Treasury Regulations</u>

The statute (section 469(l)) requires the Secretary (see section 7701(a)(11)(B)) to prescribe regulations dealing with certain matters (presumably in addition to the general authorization granted in section 7805(a)).  In the instant case, both sides rely on the relevant Treasury regulations; no question is raised as to the extent to which deference is due to these

regulations or as to whether these regulations are authorized by section 7805(a) or by section 469(l).  See T.D. 8565, 1994-2 C.B. 81, 83.

Section 1.469-4, Income Tax Regs., provides rules for grouping a taxpayer's activities for purposes of applying section 469.[6]  Under paragraph (c)(1) of this regulation, activities may

_____

[6]Sec. 1.469-4, Income Tax Regs., provides, in pertinent part, as follows:

§ 1.469-4. Definition of activity.--(a) <u>Scope and purpose</u>.--This section sets forth the rules for grouping a taxpayer's trade or business activities and rental activities for purposes of applying the passive activity loss and credit limitation rules of section 469.  A taxpayer's activities include those conducted through C corporations that are subject to section 469, S corporations, and partnerships.

\* \* \* \* \* \* \*

(c) <u>General rules for grouping activities</u>.--(1) <u>Appropriate economic unit</u>.--One or more trade or business activities or rental activities may be treated as a single activity if the activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469.

(2) <u>Facts and circumstances test</u>.--Except as otherwise provided in this section, whether activities constitute an appropriate economic unit and, therefore, may be treated as a single activity depends upon all the relevant facts and circumstances. \* \* \*

\* \* \* \* \* \* \*

(d) <u>Limitation on grouping certain activities</u>.-- The grouping of activities under this section is subject to the following limitations:

(1) <u>Grouping rental activities with other</u>
(continued...)

---

[6](...continued)

<u>trade or business activities</u>.--(i) <u>Rule</u>.--A rental activity may not be grouped with a trade or business activity unless the activities being grouped together constitute an appropriate economic unit under paragraph (c) of this section and--

(A) The rental activity is insubstantial in relation to the trade or business activity;

(B) The trade or business activity is insubstantial in relation to the rental activity; or

(C) Each owner of the trade or business activity has the same proportionate ownership interest in the rental activity, in which case the portion of the rental activity that involves the rental of items of property for use in the trade or business activity may be grouped with the trade or business activity.

(ii) <u>Examples</u>.--The following examples illustrate the application of paragraph (d)(1)(i) of this section:

<u>Example 1</u>. (i) H and W are married and file a joint return.  H is the sole shareholder of an S corporation that conducts a grocery store trade or business activity.  W is the sole shareholder of an S corporation that owns and rents out a building.  Part of the building is rented to H's grocery store trade or business activity (the grocery store rental).  The grocery store rental and the grocery store trade or business are not insubstantial in relation to each other.

(ii) Because they file a joint return, H and W are treated as one taxpayer for purposes of section 469.  See § 1.469-1T(j).  Therefore, the sole owner of the trade or business activity (taxpayer H-W) is also the sole owner of the rental activity. Consequently, each owner of the trade or business activity has the same proportionate ownership interest in the rental activity.  Accordingly, the grocery store

(continued...)

be treated as a single activity "if the activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469."  The remainder of paragraph (c) provides rules for determining whether activities constitute an appropriate economic unit.  Paragraph (d) of this regulation provides "limitations" on the grouping of activities under this section of the regulations.  One of these limitations, specified in paragraph (d)(5)(ii) of this regulation, is--

---

[6](...continued)
rental and the grocery store trade or business activity may be grouped together (under paragraph (d)(1)(i) of this section) into a single trade or business activity, if the grouping is appropriate under paragraph (c) of this section.

         *     *     *     *     *     *     *

         (5) Activities conducted through section 469 entities.--(i) In general.--A C corporation subject to section 469, an S corporation, or a partnership (a section 469 entity) must group its activities under the rules of this section.  Once the section 469 entity groups its activities, a shareholder or partner may group those activities with each other, with activities conducted directly by the shareholder or partner, and with activities conducted through other section 469 entities, in accordance with the rules of this section. A shareholder or partner may not treat activities grouped together by a section 469 entity as separate activities.

         (ii) Cross reference.--An activity that a taxpayer conducts through a C corporation subject to section 469 may be grouped with another activity of the taxpayer, but only for purposes of determining whether the taxpayer materially or significantly participates in the other activity. * * *

An activity that a taxpayer conducts through a C corporation subject to section 469 may be grouped with another activity of the taxpayer, <u>but only for</u> purposes of determining whether the taxpayer materially or significantly participates in the other activity. * * * [Emphasis added.]

4. <u>Application to the Instant Case</u>

During the years in issue, Keys Granite, a C corporation subject to section 469,[7] was solely in the business of the retail sale of granite and marble.

The parties stipulated, and we have found, that during the years in issue, Keys Holdings (1) was owned 100 percent by Carlos and (2) was engaged in a rental activity within the meaning of section 469(j)(8).

---

[7]Sec. 469 applies to "any closely held C corporation". Sec. 469(a)(2)(B). Sec. 469(j)(1) defines "closely held C corporation" by directing us to sec. 465(a)(1)(B), which in turn directs us to "the stock ownership requirement of paragraph (2) of section 542(a)". That requirement is met as to a corporation if "At any time during the last half of the taxable year more than 50 percent in value of its [the corporation's] outstanding stock is owned, directly or indirectly by or for not more than 5 individuals." The parties stipulated, and we have found, that during the years in issue, Carlos was an 86.75-percent shareholder of Keys Granite. Consequently, the stock ownership requirement of sec. 542(a)(2) has been met as to Keys Granite for the years in issue. Thus, for these years, Keys Granite was subject to sec. 469. This analysis may seem like a minicruise with many ports of call, but the result of the cruise is clear and the reason for the result of the cruise becomes apparent when we apply the regulations, <u>infra</u>.

For discussions of the advantages and disadvantages of such statutory drafting devices, see, e.g., Dickerson, The Fundamentals of Legal Drafting 130-134 (1986); Hirsch, Drafting Federal Law, sec. 5.17 (3d ed. 1992).

To determine whether section 469 limits a taxpayer's deductions in real-world settings, one generally must consider the parameters of the "activities" that the taxpayer has engaged in. The "ground rules" for setting parameters are found in section 1.469-4, Income Tax Regs., paragraph (c) of which focuses on "appropriate economic unit". Petitioners make an appealing argument that Keys Granite and Keys Holdings constitute an appropriate economic unit within these ground rules.

But in the instant case we need not, and we do not, decide whether the two Keys fit into one lock under paragraph (c). This is because paragraph (d)(5)(ii) of this regulation presents an impassible barrier to petitioners' paragraph (c) contention.

Because Keys Granite is "a C corporation subject to section 469" (see the detailed analysis supra note 7), petitioners' activities conducted through Keys Granite may be grouped with Carlos's activities conducted through Keys Holdings, but only for the purpose of determining whether Carlos materially or significantly participated in the Keys Holdings activities.

Section 469(c)(2) provides that any rental activity (the parties stipulated that Keys Holdings was engaged in a rental activity) is a passive activity "Except as provided in paragraph (7)". Under section 469(c)(7) it would be relevant to determine whether Carlos materially or significantly participated in the Keys Holdings activities. But petitioners do not contend that

section 469(c)(7) applies. Petitioners have not directed our attention to, and we have not found, any other provision (relevant to the instant case) to which the material or significant participation provision could apply. Consequently, it appears that the restriction of section 1.469-4(d)(5)(ii), Income Tax Regs., precludes petitioners from grouping the Keys Holdings activities with the Keys Granite activities for purposes of section 469 in the instant case.

We are then left with section 469 mandating that Keys Holdings' passive losses are not deductible against petitioners' income from nonpassive sources. This requires us to hold for respondent. See supra note 1.

5. Petitioners' Arguments

a. Petitioners' Interpretation of the Regulations Section

Petitioners contend that because their activities satisfy the facts and circumstances test of section 1.469-4(c)(2), Income Tax Regs., their activities in Keys Granite and Carlos's activities in Keys Holdings constitute an appropriate economic unit and thus are entitled to treatment as a single activity for purposes of measuring gain and loss under section 469. Petitioners further contend that the "but only for" restriction in section 1.469-4(d)(5)(ii), Income Tax Regs., "applies only to

the grouping of unrelated activities not to activities that constitute an appropriate economic unit and are thus treated as a single activity."

Paragraph (d) of the regulation is not so limited. Paragraph (c) of the regulation provides the authority for grouping activities. The opening language of paragraph (d) of the regulation states: "The grouping of activities under this section [i.e., all of section 1.469-4, Income Tax Regs., including, of course, paragraph (c) thereof] is subject to the following limitations". The limitation of paragraph (d)(5)(ii) of the regulation by its terms applies to all groupings under paragraph (c). We have no reason to believe the regulation does not mean what it plainly states.[8]

_____

[8]In the instant case we have not been directed to, and we have not found, any legislative history--or regulatory equivalent--suggesting that we should give other than a plain meaning effect to the "but only for" language of par. (d)(5)(ii).

For completeness, we present the only history we have found on this matter, the preamble to T.D. 8565, 1994-2 C.B. 81, 82, which states as follows:

> A commentator requested clarification on whether activities conducted through a C corporation may be grouped with activities not conducted through the C corporation. The final regulations clarify that in determining whether a taxpayer materially or significantly participates in an activity, a taxpayer may group that activity with activities conducted through C corporations that are subject to section 469 (that is, personal service and closely held C corporations).

(continued...)

Accordingly, we reject petitioners' contention that paragraph (d)(5)(ii) does not apply "to activities that constitute an appropriate economic unit".

b. Petitioners' Hypothetical

Petitioners also argue that "Even though the parties have stipulated the losses were from a rental activity, that would not cause them to be disallowed had [the Miami property] been owned directly by Keys Granite instead of being owned by a disregarded single member LLC". They assert that "Holdings' legal existence (vs. Keys Granite owning the warehouse directly) is for asset protection and not for any tax motivation purposes".

Petitioners base their argument on a hypothetical scenario involving an ownership structure that is meaningfully different from the facts in the instant case: Keys Granite did not own the Miami property. Moreover, Carlos had substantial control over his business affairs. Carlos owned 86.75 percent of Keys Granite and served as its president at the same time as his wholly owned limited liability company rented the Miami property to Keys Granite. In essence, Carlos sat on both sides of the table in the rental agreement between Keys Granite and Keys Holdings, substantially controlling the terms of the lease and the amount of the rent.

---

[8](...continued)
This explanation is consistent with our reading of the regulation.

Absent proof that the form of the transaction does not properly represent its substance, we will not relieve a party from the tax consequences of the form in which he or she appears to have molded a transaction. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579-580 (1977); Commissioner v. Nat. Alfalfa Dehydrating, 417 U.S. 134, 149 (1974) ("while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not."); Yamamoto v. Commissioner, 73 T.C. 946, 954 (1980), affd. without published opinion 672 F.2d 924 (9th Cir. 1982). Petitioners' hypothetical does not apply to the instant case, and their argument in this regard is without merit.

c. Petitioners' Argument Regarding Their Wages From Keys Granite

Petitioners maintain that, if we were to agree with their economic unit analysis, then the Keys Holdings losses should be netted against their Keys Granite wages because those wages were really the income of Keys Granite. When asked to explain that point, petitioners stated:

> Had the Taxpayers' two entities been parent/subsidiary C corporations the losses of Keys Holdings would have been netted against the income of Keys Granite by filing a consolidated income tax return (I.R.C. § 1502). The Taxpayers' wages reported on

their Form W2 would have been reduced.[9] The fact that Keys Holdings is a disregarded entity should not change the result.

Again, petitioners seek a tax treatment that is inconsistent with the structure that Carlos created for his business dealings. Petitioners received wages from Keys Granite, and according to section 469(e)(3), wages are not passive income. As we previously discussed, (1) petitioners are bound by the structure Carlos created (b. Petitioners' Hypothetical), and (2) petitioners' losses from Keys Holdings constituted a passive activity loss (a. Petitioners' Interpretation of the Regulations Section). Under section 469, petitioners may not offset their passive losses against their nonpassive income.

d. Caselaw

Both sides direct our attention to Kessler v. Commissioner, T.C. Memo. 2003-185. Respondent tells us: "The facts in this case are similar to those presented in Kessler"; petitioners counter that the small factual differences between the two cases are sufficient to cause "Kessler to lack the precedent setting the Respondent draws." In Kessler we held that the activity we

---

[9]We note that the amounts set forth supra table 1 are reported on the "Wages, salaries, tips, etc." lines of petitioners' tax returns, and not on the "dividends" lines. Petitioners do not seek to recharacterize the status of these amounts on their tax returns. The record in the instant case does not indicate any dispute between respondent and Keys Granite as to whether these amounts are deductible compensation or nondeductible distributions of profits. See Estate of Fusz v. Commissioner, 46 T.C. 214, 215 n.2 (1966).

were examining was not excepted from the definition of a rental activity, and so the taxpayer could not offset the income and losses. In our <u>Kessler</u> opinion, we stated that, because of the "but only for" language in section 1.469-4(d)(5)(ii), Income Tax Regs., the attribution rule (i.e., the rule under which the corporation's activities could be attributable to the corporation's owner) could not apply so as to permit the corporation's owner to offset the income and losses. See <u>Kessler v. Commissioner</u>, T.C. Memo. 2003-185, 85 TCM (CCH) 1543, 1547, 2003 RIA T.C. Memo. par. 2003-185, 988, 992.

Our focus in the instant case on the effect of the "but only for" language in section 1.469-4(d)(5)(ii), Income Tax Regs., is consistent with what we did in <u>Kessler</u>.

Petitioners contend that <u>Gregg v. United States</u>, 186 F. Supp. 2d 1123 (D. Or. 2000), supports their position because in <u>Gregg</u> the District Court allowed a--

> grouping (a C corporation with a limited liability company) for material participation purposes even when the two activities existed entirely independently of each other and the activities did not occur simultaneously. In <u>Gregg</u> the activities were not an appropriate economic unit and did not constitute a single activity.

Respondent rejoins as follows:

> In their brief, petitioners attempt to distinguish <u>Gregg</u> on the grounds that the activities in <u>Gregg</u> "were not an appropriate economic unit and did not constitute a single activity." <u>See</u> Petitioners' Brief at p. 7. Petitioners are incorrect. In <u>Gregg</u>, the Court specifically held that the taxpayer could "group his

activities in [the C corporation] and [the LLC] as a
single activity for determining whether he materially
participated in the activities of [the LLC] in tax year
1994." Gregg v. United States, 186 F. Supp. 2d at 1133
(emphasis added). Thus, the activities were considered
a "single activity", but only for a single purpose:
determining participation.

Gregg involved a taxpayer who created networks of health

care professionals for use by insurance companies. The taxpayer

initially did business through Ethix--a C corporation. He later

sold Ethix and formed Cadaja--a limited liability company that

was in a substantially similar business. To prevail, the

taxpayer in Gregg needed to show that he materially participated

in Cadaja. So the District Court considered whether he was able

to do so under section 1.469-4, Income Tax Regs. Citing section

1.469-4(d)(5)(ii), Income Tax Regs., the District Court allowed

grouping, but "only for purposes of determining whether the

taxpayer materially participates in the other activity." Gregg

v. United States, 186 F. Supp. 2d at 1132 (emphasis added). The

District Court concluded, on the facts in Gregg, that the

taxpayer should be treated as having materially participated in

Cadaja. As a result, the taxpayer's activities in Cadaja were

not defined as passive. The District Court concluded that, in

those circumstances, Ethix and Cadaja constituted an appropriate

economic unit for purposes of the rules of section 1.469-4(c),

Income Tax Regs.

Petitioners contend that they have a stronger "appropriate economic unit" argument than did the taxpayer in <u>Gregg</u>. But they overlook the fact that Carlos's activities in Keys Holdings would be passive even if Carlos were to have actively participated in Keys Holdings. Consequently, we are left in the instant case with a passive activity and a nonpassive activity, and the regulation's prohibition on combining the two. Thus the District Court's application in <u>Gregg</u> of section 1.469-4(d)(5)(ii), Income Tax Regs., is consistent with our analysis in the instant case and does not advance petitioners' argument.

6. <u>Holding</u>

We hold for respondent. Petitioners may not group their activities in Keys Granite with Carlos's activity in Keys Holdings to form an appropriate economic unit that may be treated as a single activity for purposes of measuring gain and loss under section 469.

In light of the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.
