**Stephen A. GREGG and Kristina K. Gregg, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV 99–845–AA.**

United States District Court, D. Oregon.

Nov. 29, 2000.

---

Marc K. Sellers, Schwabe, Williamson & Wyatt, P.C., Portland, OR, for plaintiffs.

Kristine Olson, United States Attorney, District of Oregon, Portland, OR, Jian H. Grant, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

AIKEN, District Judge.

Plaintiffs, Stephen A. Gregg and Kristina K. Gregg, bring this action for refund of income taxes and penalties plus interest under the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* Pursuant to Fed. R.Civ.P. 56, defendant filed a motion for summary judgement seeking to dismiss plaintiffs' complaint. Plaintiffs filed a cross-motion for summary judgment. For the reasons set forth below, the defendant's motion is denied, the plaintiffs' cross-motion is allowed, and this case is dismissed.

### STATEMENT OF THE FACTS

Plaintiff Stephen A. Gregg ("plaintiff") was a member of Cadaja, L.L.C. ("Cadaja") in tax year 1994. Cadaja is a limited liability company formed pursuant to the limited liability company statutes of the State of Oregon on November 4, 1994. The tax year for Cadaja in 1994 commenced on November 4, 1994, and ended on December 31, 1994. For tax year 1994, Cadaja filed a U.S. Partnership Return (Form 1065) with the Internal Revenue

Service ("IRS"); and plaintiffs filed a joint federal income tax return.

Prior to forming Cadaja, plaintiff was the CEO for Ethix Corporation. He worked five days a week, at least eight hours per day for the corporation, until he sold his stocks in Ethix Corporation on November 4, 1994. Prior to the stock sale, plaintiff had held sixty percent ownership interest in the corporation since 1990. According to plaintiff, Ethix Corporation was a managed health care company formed to establish networks of physicians. Insurance companies then used the networks to gain access to professionals and obtain their services. Specifically, Ethix Corporation was a service company that provided consulting, marketing, networking, and business services to the health care industry. Plaintiff alleges that capital is not a material income-producing factor in its business operations. Affidavit of Plaintiff in Support of Plaintiffs' Motion for Summary Judgement ¶ 3.

In November 1994, plaintiff created Cadaja with an intent to transfer the business techniques he had developed in traditional medicine into fields of alternative medicine. Plaintiff solicited the participation of other members: Candace Cappelli and Judith Fleming. Both Cappelli and Fleming were employees of Ethix Corporation before they joined Cadaja on November 4, 1994. Plaintiff was the sole financier of Cadaja; the other two members contributed no cash or property to Cadaja, however, according to plaintiff, their investment was "know-how." Both Cappelli and Fleming worked at least 40 hours per week for Cadaja in 1994 with an annual salary of $75,000. In 1994, plaintiff worked approximately 100 hours for Cadaja, but did not receive compensation for services he provided, because plaintiff thought it illogical for him, as the sole financier of Cadaja, to take money out of the business on one hand and return it to the business on the other hand.

Although Cadaja was formed in 1994, it had no offices until 1995. Each of the individuals employed by Cadaja worked from their homes and from the offices of Ethix Corporation until early 1995. In addition, Cadaja did not have an Operating Agreement until May 1995, after it changed its name to "Alternaré Group, LLC" in February 1995. The effective date of the Operating Agreement relates back to November 4, 1994.

According to plaintiff, Cadaja was formed to create a network of credentialed alternative medicine practitioners and develop management capability for alternative medicine clinics. Like Ethix Corporation, Cadaja is a service company, providing consulting, marketing, networking, and business services in the alternative medicine and alternative health care industry. Plaintiff alleges that capital is not a material income-producing factor in Cadaja's business operations. Affidavit of Plaintiff in Support of Plaintiffs' Motion for Summary Judgement ¶ 14.

The IRS audited the plaintiffs' 1994 joint income tax return. It disallowed plaintiffs' characterization of a flow-through loss from Cadaja in the amount of $230,723 as an ordinary loss, and re-characterized that loss as a passive activity loss. On March 3, 1998, the IRS issued a Notice of Deficiency to plaintiffs, setting forth a deficiency amount of $91,366 and an accuracy-related penalty of $18,273.20 pursuant to 26 U.S.C. § 6662(a). On July 27, 1998, the IRS made assessments of the audit deficiency, accuracy-related penalty under § 6662(a), and interest on deficiency against plaintiffs for tax year 1994, in the amounts of $91,366, $18,273.20, and $36,281.76, respectively.

On August 13, 1998, plaintiffs paid the deficiency assessment of $91,366. On Jan-

uary 11, 1999, in response to plaintiffs' claim for refund of $91,366, the IRS issued a Claim Disallowance. On August 26, 1999, plaintiffs paid $26,530 toward the accuracy-related penalty assessment. On November 10, 1999, in response to plaintiffs' claim for a refund of $26,530, the IRS issued a Claim Disallowance.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630, (9th Cir.1987).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all interferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630.

## DISCUSSION

Limited liability companies ("LLCs") are hybrid entities that are, under state law, neither partnerships nor corporations.

For federal income tax purposes, an LLC can be treated as either a partnership or a corporation. To avoid double tax for corporations, most LLCs are carefully structured to be treated as partnerships for federal income tax purposes and file annual information tax returns for partnerships using Form 1065. In this case, Cadaja filed a Form 1065 for tax year 1994, and was, therefore, treated as a partnership and subject to a single tax on its earnings, as well as deduction on losses, at the member or partner level rather than on the entity level.

### I. Passive Activity Loss

The issue in this case is whether plaintiff's ratable share of the flow-through operating loss from Cadaja should be characterized as ordinary loss or passive activity loss in plaintiffs' joint tax return for tax year 1994.

 Ordinary losses can be applied against any income; however, passive activity losses can be applied only against passive activity income. Passive activity losses that are not currently deductible are carried forward to the next taxable year. *See* 26 U.S.C. § 469(b). Defendant characterized plaintiff's flow-through loss from Cadaja as a passive activity loss, thus limiting any deductions to applicable passive gains. I disagree.

Passive activity loss rules pursuant to 26 U.S.C. § 469 apply to individuals. *See* 26 U.S.C. § 469(a). "Passive activity" means any trade or business in which the taxpayer does not *"materially participate."* 26 U.S.C. § 469(c)(emphasis added). "A taxpayer shall be treated as materially participating in an activity only if the [taxpayer's involvement] in the operation of the activity [is] regular, continuous, and substantial." 26 U.S.C. § 469(h)(1).

The regulations promulgated for Section 469 further interpret the "material partic-

ipation" standard by instructing that a taxpayer materially participates in an activity if the taxpayer meets one of the seven tests set forth in Temporary Treasure Regulation § 1.469–5T:

(1) The individual participates in the activity for more than 500 hours during such year;

(2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

(3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

(4) The activity is a significant participation activity for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5) The individual materially participated in the activity for any five taxable years during the ten taxable years that immediately precede the taxable year;

(6) The activity is a personal service activity, and the individual materially participated in the activity for any three taxable years preceding the taxable year; or

(7) Based on all of the facts and circumstances, the individual participates in the activity on a regular, continuous, and substantial basis during such year.

Temp. Treas. Reg. § 1.469–5T(a)(1)–(7).

In addition, if a taxpayer is a limited partner of a limited partnership, the taxpayer is presumed to not materially participate in the activity of the partnership, except as provided in the regulations. 26 U.S.C. § 469(h)(2). The regulations provide an exception to the general presumption of non-material participation as limited partners, that is, if the taxpayer is a limited partner of a limited partnership, but meets test (1),(5) or (6) of the seven material participation tests set forth in Temporary Treasure Regulation § 1.469–5T(a)(1)–(7), the taxpayer is found to materially participate in the activity of the partnership. Therefore, to satisfy the "material participation" standard, a general partner in a partnership needs to meet one of the seven tests set forth in Temporary Treasure Regulation § 1.469–5T(a)(1)–(7); however, a limited partner needs to meet one of the three tests set forth in Temporary Treasure Regulation § 1.469–5T(a)(1), (5) and (6). The standard of "material participation" for a limited partner is higher than that for a general partner.

The question becomes whether plaintiff, a member of an LLC, should be treated as a limited partner or a general partner in a limited partnership for Section 469 purposes. This court believes that this issue is one of first impression.

Plaintiffs argue that plaintiff should be treated as a general partner. Cadaja was designed to be taxable as a partnership for federal taxation purposes for tax year 1994. Oregon state law distinguishes limited partner status from general partner status based on a taxpayer's "control," rather than liability, of an business entity. *See* ORS 70.135. Under Oregon law, a general partnership interest is defined by exclusion referring to the definition of limited partner, i.e., general partner status is conferred upon a partner who is not subject to restrictions upon participation in the control of the business. *See* ORS 70.185. According to plaintiffs, because none of the members of Cadaja are subject to restrictions under Oregon law or under

the Cadaja's Articles of Organization and Operating Agreement, all members of Cadaja, including plaintiff, should be treated as general partners.

Defendant argues, however, that plaintiff should be treated as a limited partner. Although Cadaja was an LLC formed under the Oregon Limited Liability Company Act, for federal taxation purposes, and more relevantly, for Section 469 purposes, Oregon law is preempted and does not apply, except as otherwise directed by the provisions of Section 469 and its regulations. The regulations provide that for purposes of Section 469, a partnership interest shall be treated as a limited partnership interest if "[t]he liability of the holder of such interest for obligations of the partnership is limited, under the law of the State in which the partnership is organized, to a determinable fixed amount . . . ." Temp. Treas. Reg. § 1.469–5T(e)(3)(i)(B). In other words, in the context of Section 469, without a specific designation in the partnership agreement or certificate, the question whether a partnership interest is limited or general turns on whether there is limited liability under state law. If a partner has limited liability in the partnership under state law, the partner has a limited partnership interest, and therefore, is a limited partner in the partnership. The defendant argues that because Cadaja, as an LLC, extended the protection of limited liability to all of its members, including plaintiff, under Oregon law and its Operating Agreement, plaintiff's interest in Cadaja was a limited partnership interest and he was a limited partner for Section 469 purposes in tax year 1994.

■ According to defendant, for Section 469 purposes, all members of an LLC will be treated as limited partners of the LLC that is taxable as a partnership, because of their limited liabilities under Oregon law. Plaintiffs argue that the limited partnership test, as set forth in Temporary Treasure Regulation § 1.469–5T(e)(3)(i)(B) and recited by defendant, is obsolete when applied to LLCs and their members, because the limited liability statutes create a new type of business entity that is materially distinguishable from a limited partnership. I agree.

A limited partnership must have at least one general partner who is personally liable for the obligation of the limited partnership. If, for federal tax purposes, an LLC is treated as a limited partnership, and all members of the LLC are treated as limited partners because of their limited liability, the consequence of such a treatment does not satisfy the requirement of "at least one general partner." In addition, LLC members retain their limited liability regardless of their level of participation in the management of the LLC. But a limited partner in a limited partnership cannot, by definition, participate in the management.

Furthermore, the legislative history clearly shows that Congress enacted the limited partnership test for the purpose of the passive activity loss rules to thwart the deduction by investors, such as limited partners in a limited partnership, of "passive" losses from "tax shelter" investments against other non-passive income, since "a limited partner generally is precluded from participating in the partnership's business if he is to retain his limited liability status[.]" Senate Finance Committee Report on P.L. 99–514 (Tax Reform Act of 1986), *reprinted in* CCH Standard Federal Tax Rptr. (2000 ed.) at ¶ 21,960.

■ The limited partnership test is not applicable to all LLC members, because LLCs are designed to permit active involvement by LLC members in the management of the business. *See* Barbara C. Spudis, *LLCS: Recent Developments and the Developing Uses of Hybrid LLCs*, 373

PLI/Tax 1003, 1034 (1995); Hughlene A. Burton, *Taxing LLC Members as General or Limited Partners*, J. Limited Liability Companies, Spring 1996, at 168, 170. Further, LLC members may materially participate in the LLC without losing their limited liability protection. *See, e.g.,* J. Larry Lee, *The Future of Limited Liability Companies for Business and Estate Planning Purposes in Mississippi*, 18 Miss. C.L.Rev. 91, 101 (1997); Keen L. Ellsworth, *Utah Limited Liability Companies: The "Ugly Ducklings"*, 1992 B.Y.U. L.Rev. 1091, 1103 n. 47 (1992). In the absence of any regulation asserting that an LLC member should be treated as a limited partner of a limited partnership, defendant's conclusion is inappropriate. Therefore, the higher standard of material participation test for limited partners should not be applied to plaintiff. Plaintiff materially participated in the activity of Cadaja "if and only if" he satisfies one of the seven tests set forth in Temporary Treasure Regulation § 1.469–5T(a)(1)–(7).

The first test is whether plaintiff participated in the activity for more than 500 hours in tax year 1994. *See* Temp. Treas. Reg. § 1.469–5T(a)(1). Facts show that plaintiff worked approximately 100 hours for Cadaja in tax year 1994, much less than the 500–hour requirement. However, plaintiffs argue that this test provides an easy quantitative measure of "material participation." Five hundred hours per year equates to 9.62 hours per week, or 10.42 hours per week assuming 48 workweeks per year. Plaintiff alleges that he worked at least 112 hours during the period of approximately eight weeks, from November 4, 1994 to December 31, 1994, equaling approximately 14 hours per week on average. On an annualized basis, plaintiff's participation of 112 hours equates to 728 hours per year. Therefore, according to plaintiffs, plaintiff satisfied the first test.

■ Defendant argues, however, that neither Section 469 nor the regulations promulgated thereunder provide for such proration in the event of a short year. The defendant states that the plain language "if and only if" contained in § 1.469–5T(a), denotes a requirement of strict compliance. In addition, if proration is allowed, 500 hours per year equates to less than 10 hours per week. Such a *deminimis* standard of "material participation" acts against the Secretary of the Treasury's strong interest in preventing taxpayers from initiating or acquiring passive activities at the close of a taxable year, and then characterizing those losses as non-passive, and deducting the losses against ordinary income. Although, as plaintiffs argue, no regulation or case law prohibits annualizing the participation hours in the event of a short year, I defer to the defendant's explanation on how the first test should be applied.

I appreciate plaintiff's frustration regarding the application of this test, since timing of the formation of a business entity ironically affects the determination of the nature or level of a taxpayer's participation in the business activity under the first test. However, plaintiff chose to form Cadaja as an LLC over other organizational forms in November of tax year 1994 for various business reasons, which may or may not include tax considerations. Application of this test without strict compliance will open the floodgates defeating the regulations' purposes. Therefore, I find that plaintiff fails to meet the 500–hour–per–year threshold requirement under the first test.

The second test is whether plaintiff's participation in the activity for tax year 1994 constitutes substantially all of the participation in such activity of all individuals (including non-owners) for the same tax year. *See* Temp. Treas. Reg.

§ 1.469–5T(a)(2). The third test is whether plaintiff participated in the activity for more than 100 hours during tax year 1994, and the plaintiff's participation is not less than that of any individual (including non-owners) during the same year. *See* Temp. Treas. Reg. § 1.469–5T(a)(3). Plaintiff did not argue his material participation under these two tests.

■ The fourth test is "[t]he activity is a significant participation activity ... for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours." Temp. Treas. Reg. § 1.469–5T(a)(4). "Significant participation activities" are defined as

(1) *In general.* For purposes of paragraph (a)(4) of this section, an activity is a significant participation activity of an individual if and only if such activity -

(i) Is a trade or business activity ... in which the individual significantly participates for the taxable year; and

(ii) Would be an activity in which the individual does not materially participate for the taxable year if material participation for such year were determined without regard to paragraph (a)(4) of this section.

(2) *Significant participation.* An individual is treated as significantly participated in an activity for a taxable year if and only if the individual participates in the activity for more than 100 hours during such year.

Temp. Treas. Reg. § 1.469–5T(c).

Plaintiffs argue that plaintiff's participation in both Cadaja and Ethix Corporation were significant participation activities, and his "aggregate participation in all significant participation activities during [the tax year 1994] exceeds 500 hours." Therefore, according to plaintiffs, plaintiff satisfies the fourth test. Plaintiffs' arguments err in mis-characterizing his participation in Ethix Corporation as a significant participation activity under Temporary Treasure Regulation § 1.469–5T(c).

Plaintiff was a full-time CEO of Ethix Corporation working at least 40 hours per week on a continuous basis until he terminated his employment with the corporation in November 1994. His participation in Ethix Corporation far exceeded the 500–hour minimum standard as set for in Temporary Treasure Regulation § 1.469–5T(a)(1). Therefore, his activity in Ethix Corporation in tax year 1994 is a material participation activity under Temporary Treasure Regulation § 1.469–5T(a)(1). Consequently, it is not a "significant participation activity" under Temporary Treasure Regulation § 1.469–5T(c)(1)(ii). Plaintiffs mistakenly treat plaintiff's participation in Ethix Corporation as a significant participation activity and combine it with his participation in Cadaja that is arguably a significant participation activity. Therefore, plaintiff fails the fourth test.

Since the fifth and sixth tests raise common questions, they are discussed together. The fifth test is whether plaintiff "materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year [1994]." *See* Temp. Treas. Reg. § 1.469–5T(a)(5). The sixth test is whether the activity is a personal service and plaintiff materially participated in the activity for any three taxable years (whether or not consecutive) preceding the tax year 1994. *See* Temp. Treas. Reg. § 1.469–5T(a)(6). An activity is a "personal service activity" if it involves the performance of personal services in "[t]he fields of health, law, engineering, architecture ... or consulting" or "[a]ny other trade or business in which capital is not a

material income-producing factor." Temp. Treas. Reg. § 1.469–5T(d). Both Ethix Corporation and Cadaja were business entities performing consulting, marketing, networking, and business services for the health care industry, and capital was not a material income-producing factor to either of them. Therefore, plaintiff's activities in them are personal service activities.

Defendant argues that Cadaja was formed in tax year 1994, so plaintiff's activities in Cadaja alone do not meet the requirement of the fifth and the sixth tests. Plaintiffs argue, however, that plaintiff's material participation in Ethix Corporation, prior to the formation of Cadaja, should be included in considering whether plaintiff satisfies the fifth and the sixth tests.

Plaintiffs did not raise this grouping argument of plaintiff's activities in both Ethix Corporation and Cadaja until their Memorandum in Support of Plaintiffs' Motion for Summary Judgment. Defendant responds that plaintiffs' grouping argument is barred by the doctrine of variance.

 Under the doctrine of variance, a taxpayer is generally barred from asserting a claim in a refund action that was not raised in the administrative process of a claim for refund. *See* 26 U.S.C. § 7422(a); *Robinson v. United States*, 84 F.Supp.2d 1124, 1127–28 (D.Or.1999). "The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). The purpose of this requirement is "to prevent surprise and to give the IRS adequate notice of the claim and its underlying facts so that it can make an administrative investigation and determination regarding the claim." *Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir.1985). "If the [refund] claim on its face does not call for investigation of a question, the taxpayer may not later raise

that question in a refund suit." *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999) (*quoting Boyd*, 762 F.2d at 1372).

Plaintiffs argue that the issue of whether plaintiff materially participated in the business operation and affairs of Cadaja was raised with their administrative Claims for Refund filed with the IRS, and since their claim never changed, there was no variance. In addition, the IRS considered all seven tests for "material participation" in its administrative decision. Therefore, plaintiffs argue that their grouping argument under the fifth and sixth tests should be allowed.

The question here is how detailed a claim need be to provide the IRS with sufficient notice to consider a refund claim raised by a taxpayer. A broad claim, as occurred here, does not, on its face, call for investigation of a question as to whether plaintiffs can group plaintiff's activities in Cadaja and Ethix Corporation together as a "single activity" in order to decide whether plaintiff materially participated in that activity. Such a question may thus be barred. *See Quarty*, 170 F.3d at 972.

The grouping argument, however, is an argument only under the "material participation" claim. Requiring that a taxpayer list all possible arguments for each test under "material participation" claims in his Claim of Refund is not reasonable. Further, plaintiffs' grouping argument is not frivolous and was raised in good faith. To provide defendant with an opportunity to respond to plaintiffs' grouping argument, this court requested both parties address the issue "[w]hether Plaintiffs' activities in Ethix Corporation, a C corporation, and Cadaja, a limited liability company, can be grouped for the purpose of Treas. Reg. § 1.469." *See* Civil Minutes, doc. # 61. Therefore, under the circumstances of this case, this court will consider the merit of plaintiffs' grouping argument.

Treasure Regulation § 1.469–4(a), in defining the term "activity," allows a taxpayer to group his or her trade or business activities, including those conducted through C corporations that are subject to Section 469, S corporations, and partnerships, for purposes of applying the passive activity loss rules of Section 469. *See* Treas. Reg. § 1.469–4(a). This regulation is effective for taxable years ending after May 10, 1992. Treas. Reg. § 1.469–11(a)(1). Therefore, Treasure Regulation § 1.469–4 applies to this case for tax year 1994.

■ No dispute arises as to the fact that Ethix Corporation is a C corporation that is subject to Section 469. Therefore, the issue is whether plaintiff's activities in Ethix Corporation, a C corporation, and Cadaja, a limited liability company, can be grouped for the purpose of § 469. Partners and shareholders may group activities they conducted directly through a Section 469 entity (i.e., a partnership, an S corporation or a C corporation that is subject to § 469) with activities they conducted directly through other Section 469 entities. *See* Treas. Reg. § 1.469–4(d)(5)(i). A taxpayer may group his activities conducted through a C corporation subject to Section 469 with another activity of the taxpayer only for purposes of determining whether the taxpayer materially participates in the other activity. *Id.* § 1.469–4(d)(5)(ii). Therefore, the grouping of plaintiff's activities in Ethix Corporation with his activities in Cadaja is available to plaintiffs in determining whether plaintiff materially participated in his activities with Cadaja.

Treasure Regulation § 1.469–4(c) provides general rules for grouping activities: the activities to be grouped must form an "appropriate economic unit" that is determined by looking to all "facts and circumstances" with the "greatest weight" placed upon "(i) [s]imilarities and differences in types of trades or businesses; (ii)[t]he ex-

tent of common control; (iii)[t]he extent of common ownership; (iv)[g]eographic location; and (v)[i]nterdependencies between or among the activities." Treas. Reg. § 1.469–4(c)(2). Furthermore, "the fact that two undertakings are conducted by different entities does not establish that they are different activities." Staff of the Joint Comm. on Taxation, 100th Cong., General Explanation of the Tax Reform Act of 1986, 87 CIS J 86215, at 247.

The business activities of Ethix Corporation have significant similarities with those of Cadaja. Both are personal service activities, providing counseling, marketing, networking, and business services to the health care industry. The only difference between the business activities is that Ethix Corporation was involved in traditional medicine, while Cadaja was involved primarily in "alternative medicine," such as chiropractors, naturopaths, and acupuncturists. Plaintiff had common control of both Ethix Corporation and Cadaja: plaintiff was a CEO of Ethix Corporation prior to November 1994, and a founding member and managing member of Cadaja since November 1994. Plaintiff held a majority portion of ownership interest in both Ethix Corporation and Cadaja. Finally, both business entities had their principal places of business in Portland, Oregon.

Defendant, however, argues that the activities of Ethix Corporation and Cadaja existed entirely independently of each other, because Ethix Corporation was sold before Cadaja commenced operating on November 4, 1994. Defendant fails to recognize one dependency between Ethix Corporation and Cadaja and that is that plaintiff formed Cadaja primarily because he intended his expertise and reputation in the medical community established through his activities with Ethix Corporation be transferred to Cadaja. *See* Affidavit of Plaintiff in Support of Plaintiffs'

Motion for Summary Judgment ¶¶ 7 and 15. Such a dependency is particularly important for success of a professional service.

Defendant further argues that both examples under Treasure Regulation § 1.469–4(c)(3) involve a taxpayer engaging in two or more trade or business activities at the same time. *See* Treas. Reg. § 1.469–4(c)(3), Example 1 and Example 2. Since plaintiff's activities in Ethix Corporation and Cadaja did not occur simultaneously, the defendant alleges that plaintiff cannot group his activities. Defendant errs, because no rules or regulations require that activities to be grouped occur at the same time. Regulation § 1.469–4, applying to taxable years after 1992, offers a broader "facts-and-circumstances" test for reasonable grouping to define the term "activity" than previous Temporary Regulation § 1.469–4T that applies to taxable years before 1992. *See* Treas. Reg. § 1.469–11; *compare* Treas. Reg. § 1.469–4 *with* Temp. Treas. Reg. § 1.469–4T. However, Temporary Regulation § 1.469–4T provides some useful insights in dealing with activities in professional services, such as "services performed in the fields of health … or consulting." *See* Temp. Treas. Reg. § 1.469–4T(h)(1)(ii). Example 3 under Temporary Treasure Regulation § 1.469–4T(h) clearly stated that "[t]his [grouping] rule is not limited to cases in which the taxpayer holds such interests simultaneously." *Id.* § 1.469–4T(h), Example 3. Example 3 describes a scenario of medical services in which a taxpayer owned a partnership in Partnership A in 1989 and became a partner in Partnership B in 1990. The grouping of the taxpayer's activities in Partnership A and those in Partnership B is permitted. *See id.* Therefore, plaintiff can group his activities in Ethix Corporation and Cadaja as a single activity for determining whether he materially participated in the activities in Cadaja in tax year 1994.

Defendant argues that even if plaintiff's activities can be grouped for determining his material participation, plaintiff cannot materially participate in the activity of Ethix Corporation in tax year 1991 or earlier years to satisfy the fifth and sixth tests. According to temporary regulations in effect for 1991 and earlier years (i.e., the Tax Reform Act of 1989), a taxpayer could not be considered to be materially participating in an activity through a non-pass-through C corporation. *See* Temp. Treas. Reg. § 1.469–4T (1989); *Connor v. Commissioner,* 218 F.3d 733, 737 (7th Cir.2000) ("Prior to 1992, the temporary regulations promulgated by the Secretary to apply the passive activity rules ("temporary regulations") provided that shareholders in non-pass-through entities, such as the corporation, did not participate materially in the activities of such entity," and the final regulations effective from 1992 applied a broader "facts-and-circumstances" test to all entities to determine whether the activities of an entity and an individual of the entity should be considered as a single activity, rather than explicitly excluding the shareholders in non-pass-through entities).

■ Defendant's argument has merit. However, if plaintiff can group his activities in Ethix Corporation and Cadaja as a single activity under Treasure Regulation § 1.469–4 ("Definition of activity"), plaintiff can satisfy the first test, i.e., plaintiff participated in a "single activity" (grouping his activities in Ethix Corporation and Cadaja) for more than 500 hours during tax year 1994. Plaintiffs need only satisfy one of the seven tests to meet the "material participation" requirement. Therefore, I do not need to decide whether plaintiff materially participated in the activity of Ethix Corporation in tax year 1991 and

previous years in order to satisfy the fifth and sixth tests.

In conclusion, plaintiff's ratable share of the flow-through operating loss from Cadaja should be characterized as ordinary loss for tax year 1994.

II. Accuracy-related Penalty

Based on the conclusion that plaintiffs' pass-through loss from Cadaja LLC is an ordinary loss for tax year 1994, defendant's assessed accuracy-related penalty against plaintiffs is improper.

### CONCLUSION

The defendant's summary judgement motion (doc. # 32) is denied and plaintiffs' cross-motion for summary judgement (doc. # 40) is allowed. The parties are directed to confer and agree upon a final order which specifies all payments and/or refunds in accord with this opinion. The order should be submitted to the court for signature.

IT IS SO ORDERED.