132 T.C. No. 19


UNITED STATES TAX COURT


PAUL D. GARNETT AND ALICIA GARNETT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9898-06.                    Filed June 30, 2009.


Ps owned interests in L.L.P.s, L.L.C.s, and tenancies in common.  On cross-motions for partial summary judgment, the parties request a ruling as to whether Ps' interests are subject to the rule of sec. 469(h)(2), I.R.C., which treats losses from an "interest in a limited partnership as a limited partner" as presumptively passive.

<u>Held</u>:  Because Ps did not hold their interests in the L.L.P.s or L.L.C.s as "limited partners", these interests are not subject to the rule of sec. 469(h)(2), I.R.C.  <u>Held</u>, <u>further</u>, because Ps' interests in the tenancies in common are not interests in limited partnerships, these interests also are not subject to the rule of sec. 469(h)(2), I.R.C.

Jeffrey D. Toberer and Donald P. Dworak, for petitioners.[*]

J. Anthony Hoefer, for respondent.


OPINION


THORNTON, Judge:  This case is before us on the parties'
cross-motions for partial summary judgment.  Respondent
determined the following deficiencies in and penalties on
petitioners' Federal income taxes:

|  |  | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 2000 | $170,268 | $34,054 |
| 2001 | 110,300 | 22,060 |
| 2002 | 80,900 | 16,180 |

Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue, and Rule
references are to the Tax Court Rules of Practice and Procedure.

The deficiencies arise largely from respondent's
disallowance of losses claimed by petitioners and attributable to
their ownership interests in various limited liability
partnerships, limited liability companies, and other business
ventures.  Respondent disallowed the losses under section 469(a)
as passive activity losses on the ground that petitioners did not
materially participate in the activities of the business
entities.  The parties seek summary judgment as to whether

[*]Brief amicus curiae was filed by Frederick N. Widen of
Ulmer & Berne LLP, Cleveland, Ohio.

petitioners' ownership interests in the business entities are subject to the rule of section 469(h)(2), which places special restrictions on losses from an "interest in a limited partnership as a limited partner".

Summary judgment is appropriate as to this issue because there is no genuine issue of fact and a decision can be made as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  For purposes of this disposition, we set forth the following background drawn from the pleadings and affidavits produced by the parties with accompanying documents, none of which are in dispute.

## Background

Petitioners resided in Nebraska when they filed their petition.

During the years at issue petitioners owned interests in seven limited liability partnerships (L.L.P.s) and two limited liability companies (L.L.C.s) that were engaged in agribusiness operations, primarily the production of poultry, eggs, and hogs.[1] Petitioners also owned interests in two other business ventures

---

[1]Although it appears from the record that the ownership interests were held primarily if not entirely by petitioner husband, in their cross-motions for partial summary judgment and supporting legal memoranda, the parties generally refer to the various ownership interests without distinction as belonging to both petitioners.  For clarity and convenience, we do the same in this Opinion.

which they characterize as tenancies in common.  As explained in greater detail below, petitioners owned most of these interests indirectly through one or another of five separate limited liability companies (the holding L.L.C.s).[2]

A.    The L.L.P.s

Petitioners held an interest in one L.L.P. directly.[3]  They held interests in six other L.L.P.s indirectly through one or another of the holding L.L.C.s.[4]  The L.L.P.s were all registered with the State of Iowa.  They reported income and expenses on Forms 1065, U.S. Return of Partnership Income.  On Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., each L.L.P. identified the relevant holding L.L.C. or petitioner husband (Mr. Garnett) as a "limited partner".

---

[2]The holding L.L.C.s were Garnett Family Farms L.C. (GFF); Garnett Family Farms I, L.C. (GFF I); Garnett Family Farms II, L.L.C. (GFF II); Garnett Family Farms III, L.L.C. (GFF III); and Garnett Family Farms IV, L.L.C. (GFF IV).  (Under Iowa law, a limited liability company may be denoted by either L.C. or L.L.C. at the end of its name.  See Iowa Code Ann. sec. 490A.401(1) (West 1999).)

[3]Petitioners owned directly an 11.11-percent interest in Quality Poultry & Eggs, L.L.P. (QPE).

[4]Petitioners owned interests in L.L.P.s indirectly through their ownership interests in the holding L.L.C.s as follows:  GFF owned an 11.11-percent interest in Elite Pork Partnership, L.L.P.; GFF I owned a 12.5-percent interest in Center Fresh Egg Farm, L.L.P.; GFF II owned a 10-percent interest in Cedar Valley Egg Farm, L.L.P.; GFF III owned 7.5-percent interests in both Fremont Farms of Iowa, L.L.P., and Poweshiek County Pullets, L.L.P.; and GFF IV owned a 10-percent interest in Iowa Quality Pullets, L.L.P.

The L.L.P. agreements generally provided that each partner would actively participate in the control, management, and direction of the partnership's business.  The L.L.P. agreements also generally provided that no partner would be liable for the partnership's debts or obligations unless otherwise required by Iowa law.

B.  The L.L.C.s

Petitioners held, in addition to their interests in the holding L.L.C.s, a 16.66-percent interest in one L.L.C. directly and a 10.12-percent interest in another L.L.C. through one of the holding L.L.C.s.[5]  These two L.L.C.s, like the holding L.L.C.s, were organized and operated under Iowa law.  They reported income and expenses on Forms 1065.[6]  On Schedule K-1, each L.L.C. identified the relevant holding L.L.C. or Mr. Garnett as a "limited liability company member".

The L.L.C. operating agreements generally provided that business was to be conducted by a manager with exclusive authority to act for the company.  The manager was to be selected by majority vote of the L.L.C.'s members and had the responsibility, among others, to "effectuate * * * the regulations and decision of the Members".  Petitioners were not

_____

[5]Petitioners owned directly an interest in Fremont Farms L.C.  Petitioners owned an interest in Single Poultry Source, L.L.C., indirectly through GFF IV.

[6]The record does not reflect the manner of the holding L.L.C.s' tax reporting.

managing members of the two L.L.C.s that were not holding L.L.C.s.[7]

## C.    Other Business Ventures

Petitioners also owned indirectly, through one of the holding L.L.C.s, interests in two other business entities, GRD I and GRD II.[8]  Petitioners represent, and respondent has not disputed, that GRD I and GRD II were "de facto" partnerships in Iowa, "holding title as tenants-in-common among three partners" (hereinafter the tenancies in common).  On their respective Forms 1065 for GRD I and GRD II, the type of entity is listed as "TENANTS IN COMMON"; the principal business activity is listed identically as "RENTAL REAL ESTATE".  On Schedules K-1, GFF I is shown as holding a one-third share in both GRD I and GRD II; GFF I is identified as a "general partner" of GRD I and as a "limited partner" of GRD II.

## D.    Petitioners' Tax Returns and the Notice of Deficiency

On their joint Federal income tax returns for 2000, 2001, and 2002, petitioners reported income and losses from their interests in the L.L.C.s, including the holding L.L.C.s, and the L.L.P.s.  In the notice of deficiency respondent disallowed

---

[7]The record indicates that petitioner husband was the manager of GFF I and GFF II but does not indicate the manager of the three other holding L.L.C.s.

[8]Petitioners held these interests indirectly through GFF I. Insofar as the record reveals, GRD I and GRD II are the actual names rather than mere acronyms.

certain of these claimed losses on the ground that petitioners had failed to meet the material participation requirements of section 469.[9]

Discussion

A.   Passive Activity Losses

   1.   In General

Section 469(a)(1) limits the deductibility of losses from certain passive activities of individual taxpayers.  Passive losses disallowed in one year generally may be carried over to the next year.  Sec. 469(b).  Generally, a passive activity is a trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  Material participation is defined generally as regular, continuous, and substantial involvement in the business operations.  Sec. 469(h)(1).  The regulations provide seven exclusive tests for material participation in an

---

[9]Respondent also disallowed some claimed losses on the additional ground that they were from rental activities determined to be per se passive activities under sec. 469(c)(2).

activity.[10]  Sec. 1.469-5T(a), Temporary Income Tax Regs., 53

---

[10]The regulations provide that an individual generally will be treated as materially participating in an activity during a year if and only if:

(1) The individual participates in the activity for more than 500 hours during such year;

(2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

(3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

(4) The activity is a significant participation activity (within the meaning of paragraph (c) of this section) for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5) The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

(6) The activity is a personal service activity (within the meaning of paragraph (d) of this section), and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

(7) Based on all of the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.

[Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).]

Fed. Reg. 5725-5726 (Feb. 25, 1988).

    2.  <u>Special Rule for Certain Limited Partnership Interests</u>

The heart of the controversy before us is section 469(h)(2), which presumptively treats losses from certain limited partnership interests as passive. Section 469(h)(2) provides: "Interests in limited partnerships. Except as provided in regulations, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates." Temporary regulations were promulgated in 1988 but have never been made final.[11] The temporary regulations permit a taxpayer to establish material participation in a limited partnership but constrain the taxpayer to only three of the seven regulatory tests that ordinarily are available.[12] Sec. 1.469-5T(e)(1) and (2), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). The temporary regulations provide:

---

[11]Sec. 7805(e)(2) provides: "Any temporary regulation shall expire within 3 years after the date of issuance of such regulation." This provision, which was enacted in 1988, applies to any temporary regulation issued after Nov. 20, 1988. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, Sec. 6232(b), 102 Stat. 3735. The temporary regulations involved herein were issued Feb. 19, 1988, before the effective date of sec. 7805(e).

[12]For the holder of an interest in a limited partnership subject to sec. 469(h)(2), the exclusive tests for establishing material participation are the first, fifth, and sixth tests described <u>supra</u> note 10. See sec. 1.469-5T(e)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

(e) Treatment of limited partners--(1) General rule.--
Except as otherwise provided in this paragraph (e), an
individual shall not be treated as materially
participating in any activity of a limited partnership
for purposes of applying section 469 and the
regulations thereunder to--

(i) The individual's share of any income, gain, loss,
deduction, or credit from such activity that is attributable
to a limited partnership interest in the partnership; and

(ii) Any gain or loss from such activity recognized
upon a sale or exchange of such an interest.

(2) Exceptions.--Paragraph (e)(1) of this section shall
not apply to an individual's share of income, gain, loss
deduction, and credit for a taxable year from any activity
in which the individual would be treated as materially
participating for the taxable year under paragraph (a)(1),
(5) or (6) of this section if the individual were not a
limited partner for such taxable year.

(3) Limited partnership interest--(i) In general.--
Except as provided in paragraph (e)(3)(ii) of this section,
for purposes of section 469(h)(2) and this paragraph (e), a
partnership interest shall be treated as a limited
partnership interest if--

(A) Such interest is designated a limited partnership
interest in the limited partnership agreement or the
certificate of limited partnership, without regard to
whether the liability of the holder of such interest for
obligations of the partnership is limited under the
applicable State law; or

(B) The liability of the holder of such interest for
obligations of the partnership is limited, under the law of
the State in which the partnership is organized, to a
determinable fixed amount (for example, the sum of the
holder's capital contributions to the partnership and
contractual obligations to make additional capital
contributions to the partnership).

(ii) Limited partner holding general partner
interest.--A partnership interest of an individual shall not
be treated as a limited partnership interest for the
individual's taxable year if the individual is a general

partner in the partnership at all times during the partnership's taxable year ending with or within the individual's taxable year (or portion of the partnership's taxable year during which the individual (directly or indirectly) owns such limited partnership interest). [Sec. 1.469-5T(e), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).]

B.   The Issue Presented

The issue presented by the cross-motions for partial summary judgment is whether petitioners' interests in the L.L.P.s, L.L.C.s (other than the holding L.L.C.s), and tenancies in common (hereinafter collectively "the companies") should be considered interests in limited partnerships "as a limited partner" so as to be treated as presumptively passive under the special rule of section 469(h)(2).[13]

C.   The Parties' Contentions

In their motion for partial summary judgment, petitioners contend that section 469(h)(2) is inapplicable because none of the companies was a limited partnership and because petitioners are considered to be general partners rather than limited partners in the companies.  Petitioners rely upon Gregg v. United

---

[13]The parties seek a ruling only with respect to the companies other than the holding L.L.C.s.  Respondent asserts, and petitioners do not dispute, that for purposes of applying sec. 469(h)(2) in this case, the intervening interests of the holding L.L.C.s are to be disregarded. Respondent states:  "That petitioners mostly held their interests indirectly (through Garnett Family Farm entities) is of no consequence".  In the light of the parties' seeming agreement on this point, we need not and do not consider further the extent to which the nature of an ownership interest in an intervening entity might be material in applying sec. 469(h)(2).

States, 186 F. Supp. 2d 1123 (D. Or. 2000), which held that the special rule of section 469(h)(2) did not apply to a member of an L.L.C. formed under Oregon law.

In his cross-motion for partial summary judgment respondent contends primarily that section 469(h)(2) applies to petitioners' interests in the companies because they meet the definition of a "limited partnership interest" set forth in the temporary regulations. Respondent further contends that petitioners' interests were not "'general partner' interests as that term is commonly used." Respondent contends that Gregg v. United States, supra, was decided incorrectly.

D.   The L.L.P.s and L.L.C.s[14]

We can be certain that when it enacted section 469(h)(2) in 1986, Congress did not have L.L.P.s specifically in mind, since L.L.P.s did not come into existence until 1991. See 1 Bromberg & Ribstein, Partnership, sec. 1.01(b)(5) (1998). Similarly, it is doubtful that Congress had L.L.C.s specifically in mind, since only one State, Wyoming, had an L.L.C. statute in 1986. Id. sec. 1.01(b)(4). The temporary regulations, promulgated in 1988, make no explicit reference to L.L.P.s or L.L.C.s. The question is whether section 469(h)(2) nevertheless applies to them. Because

---

[14]Because the treatment of petitioners' interests in the tenancies in common raises special considerations, we consider them separately infra.

our analysis is informed by differences among limited partnerships, L.L.P.s, and L.L.C.s, we start there.

1.  Background:  Limited Partnerships, L.L.P.s, and L.L.C.s

Limited partnerships have two classes of partners, general and limited.[15]  See Iowa Code Ann. sec. 488.102(10), (12) (West 1999); 1 Bromberg & Ribstein, supra sec. 1.01(b)(3).  "General partners typically have management power and personal liability while limited partners lack management powers and enjoy immunity from liability for debts of the partnership."  1 Bromberg & Ribstein, supra sec. 1.01(b)(3).  Limited partners are typically "passive investors".  Id.  A fundamental concept of limited partnerships is that a limited partner may lose limited liability by taking part in control of the partnership.  See 3 Bromberg & Ribstein, supra sec. 11.02(c).[16]

An L.L.P. is a general partnership that by making a filing or registration has obtained a form of limited liability for its

---

[15]In Iowa, limited partnerships are formed under the Iowa Uniform Limited Partnership Act or Revised Uniform Limited Partnership Act.  See Iowa Code Ann. sec. 487.101 (West 1999).  Under Iowa law, the term "limited partner" is generally used only for limited partners in a limited partnership formed under these statutes.  Id.

[16]The Iowa Uniform Limited Partnership Act, as enacted in 1916, provided that a limited partner who takes part in control loses limited liability.  3 Bromberg & Ribstein, Partnership, sec. 11.02(b) (1998).  The Iowa Revised Uniform Limited Partnership Act, in its 1976 enactment and again in its 1985 amendments, softened this rule by reducing the scope of a limited partner's liability for taking part in control.  See id. sec. 11.02(c) and (d).

general partners.[17]  1 Bromberg & Ribstein, supra sec.
1.01(b)(5).  In other respects, an L.L.P. is generally subject to
the provisions of the applicable general partnership statute.
Id.; see Iowa Code Ann. sec. 486A.201 (West 1999) ("A limited
liability partnership continues to be the same entity that
existed before the filing of a statement of qualification").
Consequently, members of an L.L.P. are not statutorily restricted
from participating in management.  See Iowa Code Ann. secs.
486A.101, 486A.1001 (West 1999).

An L.L.C. is "essentially a hybrid of the corporate and
partnership forms of business."  1 Bromberg & Ribstein, supra
sec. 1.01(b)(4).[18]  L.L.C. members can participate directly in
management but have limited liability for the company's debts and
liabilities.  See generally Iowa Code Ann. ch. 490A (West 1999);
1 Bromberg & Ribstein, supra sec 1.01(b)(4).

Notwithstanding these differences among limited
partnerships, L.L.P.s, and L.L.C.s, they are all generally
treated for Federal income tax purposes as partnerships.  See
sec. 761(a).  See generally McNamee v. Dept. of the Treasury, 488
F.3d 100 (2d Cir. 2007); Littriello v. United States, 484 F.3d
372 (6th Cir. 2007); Med. Practice Solutions, LLC v.

---

[17]In Iowa, an L.L.P. is formed under the Iowa Uniform
Partnership Act.  See Iowa Code Ann. sec. 486A.101 (West 1999).

[18] Iowa Code Ann. sec. 490A.102 (West 1999) defines an
L.L.C. as an "unincorporated association having one or more
members, and organized under or subject to this chapter."

Commissioner, 132 T.C. __ (2009); sec. 1.761-1, Income Tax Regs.; sec. 301.7701-2(c)(1) Proced. & Admin. Regs. Under the so-called check-the-box regulations, certain eligible business entities, including many domestic L.L.C.s and L.L.P.s, can elect to be treated as corporations. Sec. 301.7701-3(b)(1)(i), Proced. & Admin. Regs. Such an election is effective for Federal tax purposes, including application of the rules in sec. 469. Sec. 301.7701-3(a), Proced. & Admin. Regs. Insofar as the record reveals, none of the companies involved herein elected to be treated as a corporation pursuant to these regulations.

    2.  L.L.P. and L.L.C. Interests as "Limited Partnership Interests" Under the Temporary Regulations

Acknowledging that differences exist among limited partnerships, L.L.P.s, and L.L.C.s, respondent contends that under the temporary regulations the differences are "irrelevant". Respondent contends that the "sole relevant consideration" is that petitioners enjoyed limited liability with respect to their ownership interests. Because of this limited liability, respondent contends, each L.L.P. and L.L.C. interest in question is a "limited partnership interest" under the temporary regulations. See sec. 1.469-5T(e)(3)(i), Temporary Income Tax Regs., supra. According to respondent, this ends the matter. Respondent's contentions, however, overlook the fact that the operative condition for applying section 469(h)(2) is not simply that there be an "interest in a limited partnership" but an

"interest in a limited partnership <u>as a limited partner</u>".  Sec. 469(h)(2) (emphasis added).

The Code and regulations provide no general definition of "limited partner".[19]  Petitioners suggest we should interpret the term literally to mean nothing more nor less than a limited partner in an entity that is classified as a limited partnership under applicable State law.  Under such a literal reading, they suggest, a member of an L.L.P. or an L.L.C. could not be a "limited partner" because neither an L.L.P. nor an L.L.C. is, strictly speaking, a limited partnership.

We are not convinced, however, that such a narrow construction is appropriate.  Although not free of ambiguity, the legislative history suggests that Congress contemplated that the Secretary would have regulatory authority to treat "substantially equivalent entities" as limited partnerships for purposes of section 469(h)(2).[20]  S. Rept. 99-313, at 732 (1986), 1986-3 C.B.

---

[19]Certain proposed regulations define "limited partner" "Solely for purposes of section 1402(a)(13)" and the regulations thereunder, dealing with self-employment tax.  Sec. 1.1402(a)-2(h), Proposed Income Tax Regs., 62 Fed. Reg. 1704 (Jan. 13, 1997).  These proposed regulations do not expressly address the treatment of an L.L.P. or L.L.C. member.

[20]As petitioners point out, this quoted Senate report phrase occurs in explaining the introductory language of sec. 469(h)(2) ("Except as provided in regulations") which authorizes regulatory <u>exceptions</u> to the general rule of sec. 469(h)(2) that treat certain interests in limited partnerships as presumptively passive.  Petitioners suggest that Congress never intended the Secretary's authority to be used to <u>expand</u> the reach of sec. 469(h)(2) to entities other than limited partnerships.  The
(continued...)

(Vol. 3) 1, 732.  As a corollary, it would appear that Congress also contemplated that at least some ownership interests in such "substantially equivalent entities" might be treated as interests held by limited partners.

At first glance, it might seem the temporary regulations accomplish this result with respect to an ownership interest in an L.L.P. or an L.L.C., insofar as section 1.469-5T(e)(3)(i), Temporary Income Tax Regs., supra, would appear to treat such an

---

[20](...continued)
Senate report states in relevant part:

> Under the bill, the Secretary of the Treasury is empowered to provide through regulations that limited partnership interests in certain circumstances will not be treated (other than through the application of the general facts and circumstances test regarding material participation) as interests in passive activities.
> * * *
>
> * * * The exercise of such authority might also be appropriate where taxpayers sought to avoid limited partnership status with respect to substantially equivalent entities.
>
> [S. Rept. 99-313, at 731-732 (1986), 1986-3 C.B. (Vol. 3) 1, 731-732; emphasis added.]

It is unclear whether the Senate report, as drafted, makes the point for which it was intended.  Suspicions are heightened by the fact that in the General Explanation of the Tax Reform Act of 1986 at 236 (J. Comm. Print 1987) (published several months after the enactment of the 1986 Tax Reform Act), the staff of the Joint Committee on Taxation reproduced the quoted sentences almost verbatim but changed the words "such authority" to the arguably less restrictive "regulatory authority".  More pertinently, the context of the sentences in question, addressing concerns about abusive efforts to "avoid" limited partnership status, seems to support a broader reading than petitioners favor.

interest as a "limited partnership interest".  If the general
partner exception applies, however, then the ownership interest
"shall not be treated as a limited partnership interest".  Sec.
1.469-5T(e)(3)(ii), Temporary Income Tax Regs., supra (the
general partner exception).  The question, then, is whether the
general partner exception applies.

    3.  <u>The General Partner Exception</u>

As indicated by its caption, "Limited partner holding
general partner interest", the general partner exception clearly
applies to situations where a partner in a State law limited
partnership possesses dual limited and general partnership
interests.  Sec. 1.469-5T(e)(3)(ii), Temporary Income Tax Regs.,
supra.  By its terms, however, the general partner exception is
not expressly confined to such a situation, and respondent makes
no argument that it should be so confined.[21]  In particular,
respondent does not contend that the general partner exception is

_____

[21]As a practical matter, it would not appear that the
general partner exception would be of much consequence as applied
to a State law limited partnership in which the general partner
does not also hold a limited partner interest.  Because a general
partner interest would appear unlikely to be characterized as a
"limited partnership interest" under sec. 1.469-5T(e)(3)(i),
Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988),
the general partner exception would appear generally unnecessary
if the general partner did not also possess a limited partner
interest.  If we seek, however, to apply the temporary
regulations to an entity like an L.L.P. or an L.L.C. which has a
single type of ownership interest that does not correspond
squarely to either a limited partner interest or a general
partner interest but instead reflects aspects of each, the
general partner exception takes on heightened significance.

categorically unavailable to members of L.L.P.s or L.L.C.s.
Rather, respondent appears to suggest that the availability of
the general partner exception depends upon the extent of
authority and control that the L.L.P. or L.L.C. member enjoys.

The temporary regulations do not define the term "general
partner".  Nor is a general definition of "general partner" found
in the Code or elsewhere in the regulations.[22]  Citing Giles v.
Vette, 263 U.S. 553, 560 (1924), respondent contends that in
common usage the term general partner means one who has
"authority, actual or apparent, to act for and bind the
copartnership."[23]

---

[22]The term "general partner" is used multiple times in the
Code and the regulations but without a general definition.  In
certain contexts the term refers specifically to a general
partner in a limited partnership.  See, e.g., sec.
2701(b)(2)(B)(ii); sec. 1.280G-1, Q&A-7(e), Example (3), Proposed
Income Tax Regs.; sec. 1.368-2(m)(5), Example (8), Proposed
Income Tax Regs., 69 Fed. Reg. 49840 (Aug. 12, 2004).  More
commonly, however, "general partner" seems to refer more broadly
to any partner (whether or not in a limited partnership) other
than a limited partner.  See, e.g., secs. 465(c)(7)(D)(ii)(I),
736(b)(3)(B), 988(c)(1)(E)(v), 6231(a)(7); secs. 1.42-2(d)(3)(i),
1.904-4(e)(3)(iv), Example (4), Income Tax Regs.; secs. 1.367(a)-
1T(c)(3)(i)(A), 1.367(a)-2T(c)(2)(ii), Temporary Income Tax
Regs., 51 Fed. Reg. 17940, 17943 (May 15, 1986).

[23]We are not persuaded that Giles v. Vette, 263 U.S. 553,
560 (1924), provides the all-purpose definition of "general
partner" which respondent claims to discover there.  The holding
in Giles was that would-be limited partners in a failed limited
partnership were not liable as general partners under the Uniform
(General) Partnership Act then in effect in Illinois because the
facts and circumstances indicated they did not intend to become
general partners.  The Court in Giles was less concerned with the
definition of a general partner than with the existence of a
partnership.  That is not the concern presented here.  To the
(continued...)

Petitioners contend and respondent does not dispute that under Iowa law they were not precluded from actively participating in the management and operations of the L.L.P.s and L.L.C.s. Nor does respondent dispute that petitioners were given at least some role to play in the management of the L.L.P.s and L.L.C.s. Respondent contends, however, that these circumstances do not suffice to classify petitioners as general partners because: "The partnership agreements here did not give petitioners the authority to take action on behalf of the partnerships as a general partner would (nor did petitioners function like they were general partners)."[24]

Consequently, in determining the applicability of section 469(h)(2), respondent suggests that we should make threshold factual inquiries into the nature and extent of petitioners' authority to act on behalf of the L.L.P.s and the L.L.C.s. These threshold factual inquiries, however, seem closely akin to factual inquiries appropriately made under the general tests for material participation. To import them into the per se rule of

_____

[23](...continued)
contrary, respondent's arguments for applying sec. 469(h)(2) presuppose that the L.L.P.s and the L.L.C.s are to be treated as partnerships and that petitioners are to be treated as partners for Federal income tax purposes.

[24]If we were to agree with respondent's test for applying the general partner exception, which we do not, we would conclude that there are genuine issues of material fact as to the nature and extent of petitioners' authority and involvement with the L.L.P.s and the L.L.C.s.

section 469(h)(2) would tend, we believe, to blur that special rule and the general rules for material participation in a manner that is at odds with the statutory framework and legislative intent.

The legislative history sets forth "special considerations" that pertained in treating limited partnership interests as presumptively passive under section 469(h)(2):  "since a limited partner generally is precluded from participating in the partnership's business if he is to retain his limited liability status, the committee believes it should not be necessary to examine general facts and circumstances regarding material participation in this context."  S. Rept. 99-313, supra at 720, 1986-3 C.B. (Vol. 3) at 720.  Similarly, the legislative history states:  "In general, under relevant State laws, a limited partnership interest is characterized by limited liability, and in order to maintain limited liability status, a limited partner, as such, cannot be active in the partnership's business."  Id. at 731, 1986-3 C.B. (Vol. 3) at 731.

Thus, while limited liability was one characteristic of limited partners that Congress considered in the enactment of section 469(h)(2), it clearly was not, as respondent suggests, the sole or even determinative consideration.  To the contrary, the more direct and germane consideration was the legislative belief that statutory constraints on a limited partner's ability

to participate in the partnership's business justified a presumption that a limited partner generally does not materially participate and made further factual inquiry into the matter unnecessary.

We do not believe that this rationale properly extends to interests in L.L.P.s and L.L.C.s. As previously discussed, members of L.L.P.s and L.L.C.s, unlike limited partners in State law limited partnerships, are not barred by State law from materially participating in the entities' business. Accordingly, it cannot be presumed that they do not materially participate. Rather, it is necessary to examine the facts and circumstances to ascertain the nature and extent of their participation. That factual inquiry is appropriately made, we believe, pursuant to the general tests for material participation under section 469 and the regulations thereunder. We anticipate that this examination will occur in subsequent phases of this proceeding.

Accordingly, with appropriate regard for the legislative purpose of section 469(h)(2), we conclude that petitioners held their ownership interests in the L.L.P.s and the L.L.C.s as "general partners" within the meaning of the temporary regulations. In doing so, we recognize that petitioners' status in these entities differs significantly from the status of general partners in State law limited partnerships, but we also recognize that their status differs significantly from that of

limited partners in State law limited partnerships. The need to pigeonhole the ownership interests as either general partner interests or limited partner interests arises in the first instance from the fiction of treating an L.L.P. or an L.L.C. as a "limited partnership" under section 1.469-5T(e)(3)(i), Temporary Income Tax Regs., supra. Inasmuch as classifying an L.L.P. or L.L.C. interest as a limited partnership interest entails a departure from conventional concepts of limited partnerships, it similarly entails, we believe, a departure from conventional concepts of general partners and limited partners. In the final analysis, and absent explicit regulatory provision, we conclude that the legislative purposes of the special rule of section 469(h)(2) are more nearly served by treating L.L.P. and L.L.C. members as general partners for this purpose. See Gregg v. United States, 186 F. Supp. 2d 1123 (D. Or. 2000) (holding that section 469(h)(2) did not apply to Oregon L.L.C. members).

4. Conclusion

We conclude and hold that petitioners' ownership interests in the L.L.P.s and the L.L.C.s are excepted from classification as "limited partnership interests" under the temporary regulations by operation of the general partner exception. Accordingly, petitioners' ownership interests in the L.L.P.s and the L.L.C.s are not subject to the special rule of section 469(h)(2). In reaching this result, we emphasize that we do not

invalidate the temporary regulations in any respect but simply decline to fill any gap therein to reflect respondent's litigating position in this case. See Gen. Dynamics Corp. & Subs. v. Commissioner, 108 T.C. 107, 120-121 (1997) ("Respondent's litigating position is not afforded any more deference than that of petitioners. * * * That is especially so here, where respondent did not publish her position prior to this controversy.").

E.    The Tenancies in Common

As previously indicated, respondent has not disputed petitioners' assertion that GRD I and GRD II were tenancies in common, as characterized on their Forms 1065. Nor does respondent expressly argue for any other characterization of these entities. We treat respondent as having conceded that GRD I and GRD II were tenancies in common.[25]

In his cross-motion for partial summary judgment, respondent makes no express argument (apart from his arguments regarding L.L.P.s and L.L.C.s) for treating an interest in a tenancy in common as an interest in a limited partnership pursuant to

---

[25]The parties apparently agree that the tenancies in common should be recognized as separate business entities. Cf. sec. 301.7701-1(a)(2), Proced. & Admin. Regs. ("mere co-ownership of property that is maintained, kept in repair, and rented or leased does not constitute a separate entity for federal tax purposes"; by contrast, a joint venture may create a separate entity where the co-owners "carry on a trade, business, financial operation, or venture and divide the profits therefrom.")

section 469(h)(2) and the regulations thereunder.[26]  In particular, respondent has not asserted and the record does not suggest that these interests were designated limited partnership interests, as provided in section 1.469-5T(e)(3)(i)(A), Temporary Income Tax Regs., supra.  Nor has respondent expressly argued that petitioners' liability with respect to either of these interests was limited to a determinable, fixed amount within the meaning of section 1.469-5T(e)(3)(i)(B), Temporary Income Tax Regs., supra.[27]  We conclude and hold that petitioners' interests in GRD I and GRD II are not interests in limited partnerships within the meaning of section 469(h)(2).  Perforce it follows that petitioners did not hold their interests in the joint tenancies as "limited partners".

F.   Alleged Reporting Inconsistencies

Respondent observes that with one exception, the Schedules K-1 that the companies issued to petitioners or the relevant

---

[26]In his cross-motion for partial summary judgment, respondent reserves as an additional basis for disallowing petitioners' losses from GRD I and GRD II, and possibly other entities, that their activities were per se passive rental activities pursuant to sec. 469(c)(2).  With regard to this issue, there are genuine issues of material fact.  This issue is not within the scope of the parties' cross-motions for partial summary judgment, and we do not consider it further herein.

[27]Respondent has not argued that petitioners enjoyed limited liability with respect to their interests in the tenancies in common by virtue of the fact that they held the interests indirectly through a holding L.L.C..  To the contrary, as previously noted, respondent contends that it is of "no consequence" that petitioners held interests indirectly through the holding L.L.C.s.

holding L.L.C. described the interests as something other than that of a "general partner".[28]  In particular, the Schedules K-1 for the subject L.L.P.s and for one of the tenancies in common (GFF II) described each interest as that of a "limited partner"; the Schedules K-1 for the two L.L.C.s that were not holding L.L.C.s described each interest as that of a "limited liability company member."  Respondent contends that petitioners obtained a tax benefit by failing to designate their interests as "general partner" interests, in that they thereby avoided self-employment tax pursuant to section 1402(a)(13), which excludes from self-employment earnings certain distributive shares of a "limited partner".

Petitioners contend that they or the holding L.L.C.s were listed as "limited partners" on the L.L.P.s' Schedules K-1 only because Schedule K-1 does not list "limited liability partner" as one of the check-the-box options.[29]

With respect to the L.L.C.s' Schedules K-1, we see no irregularity or inconsistency in the interests' being listed as those of a "limited liability company member."  In any event, respondent concedes that the manner in which the Schedules K-1

---

[28]One of the tenancies in common, GRD I, described the holding L.L.C.'s (GFF I's) interest as "general partner".

[29]Petitioners have not expressly offered an explanation as to why GFF I identified the holding L.L.C.'s interest as "general partner" while GFF II identified the holding L.L.C.'s interest as "limited partner".

described the interests does not conclusively establish that petitioners held limited partnership interests. Respondent does not assert that petitioners are collaterally estopped or constrained by any duty of consistency from asserting in this proceeding that they did not hold interests as limited partners for purposes of section 469(h)(2). In neither the notice of deficiency nor the answer has respondent asserted any deficiency attributable to underpaid self-employment taxes.

In these circumstances, we are not persuaded that the alleged inconsistencies in the manner in which petitioners' interests were listed on the Schedules K-1 are material. Nor has respondent otherwise set forth specific facts to show that there is a genuine issue of material fact requiring trial as to the application of section 469(h)(2). See Rule 121(d).

Accordingly, we shall grant petitioners' motion for partial summary judgment and deny respondent's motion for partial summary judgment.

<u>An appropriate order</u>

<u>will be issued</u>.